**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DINO PALADINO,      :
     :
           Plaintiff,      :
     :
       - against -      :          07 Civ. 1579 (DRH) (ARL)
     :
     :
DHL EXPRESS (USA), INC. and,      :
INTERNATIONAL BROTHERHOOD OF      :
TEAMSTERS AIR FREIGHT CHAUFFERS,      :
HANDLERS, WAREHOUSEMEN & ALLIED      :
WORKERS UNION NO. 295,      :
     :
           Defendants.      :
-------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DHL EXPRESS (USA), INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

THOMPSON WIGDOR & GILLY LLP
Andrew S. Goodstadt
Cindy E. Uh
85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845

*Counsel for Defendant DHL Express (USA), Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 3

LEGAL ARGUMENT ...................................................................................................... 9

I.   STANDARD OF REVIEW ................................................................................... 9

II.  PLAINTIFF'S DISABILITY DISCRIMINATION CLAIM UNDER
     THE NYSHRL MUST FAIL............................................................................. 10

        A.  Plaintiff Cannot Establish A *Prima Facie* Case Of Disability
            Discrimination ................................................................................... 11

        B.  There Is No Evidence That DHL Treated Any Similarly-Situated
            Employee Differently Than Plaintiff................................................. 14

        C.  DHL Had A Legitimate, Non-Discriminatory Reason For
            Terminating Plaintiff ......................................................................... 18

III. PLAINTIFF'S HYBRID § 301 CLAIM FAILS AS A MATTER OF LAW ............ 20

        A.  Plaintiff Cannot Overcome His Initial Burden Of Establishing That
            Local 295 Breached Its Duty Of Fair Representation ...................... 21

        B.  DHL Acted In Accordance With The CBA And Plaintiff Cannot
            Prove Otherwise ................................................................................. 23

IV.  PLAINTIFF REQUESTED RELIEF SHOULD BE DISMISSED ........................... 25

CONCLUSION............................................................................................................... 26

## TABLE OF AUTHORITIES

### CASES

*Air Line Pilots Ass'n Int'l v. O'Neill*,
499 U.S. 65 (1991) ...............................................................................................21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...............................................................................................9

*Barnett v. Revere Smelting & Ref. Corp.*,
67 F. Supp. 2d 378 (S.D.N.Y. 1999) .......................................................................13

*Barr v. United Parcel Serv.*,
868 F.2d 36 (2d Cir. 1989) ....................................................................................22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...............................................................................................9

*Chauffers, Teamsters & Helpers, Local No. 391 v. Terry*,
494 U.S. 558 (1990) ..............................................................................................21

*Cook v. Pan Am. World Airways, Inc.*,
771 F.2d 635 (2d Cir. 1985) ..................................................................................22

*Debidat v. Marriott Int'l, Inc.*,
580 F. Supp. 2d 300 (S.D.N.Y. 2008) ....................................................................16

*Del Costello v. Int'l Bhd. of Teamsters*,
462 U.S. 151 (1983) ..............................................................................................20

*Farias v. Instructional Sys.*,
259 F.3d 91 (2d Cir. 2001) ....................................................................................25

*Ferraro v. Kellwood Co.*,
440 F.3d 96 (2d Cir. 2006) ....................................................................................10

*Fiscina v. N.Y.C. Dist. Council of Carpenters*,
401 F. Supp. 2d 345 (S.D.N.Y. 2005) ....................................................................19

*Fristoe v. Reynolds Metals Co.*,
615 F.2d 1209 (9th Cir. 1980) ...............................................................................23

*Garcia Beauchat v. Mineta*,
No. 03 Civ. 3196, 2006 U.S. Dist. LEXIS 67844 (E.D.N.Y. Sept. 21, 2006) .............15, 18

*Goenaga v. March of Dimes Birth Defects Found.*,
51 F.3d 14 (2d Cir. 1995) ......................................................................................9

*Hines v. Anchor Motor Freight. Inc.,*
424 U.S. 554 (1976) ........................................................................................................21

*Ivaniuc v. Hauer Knitting Mills, Inc.,*
No. 94 Civ. 5909, 1998 U.S. Dist. LEXIS 21789 (E.D.N.Y. Feb. 10, 1998) ...................14

*Jimenez v. Big M, Inc.,*
86 F. Supp. 2d 236 (S.D.N.Y. 2000) ................................................................................14

*Kavowras v. N.Y. Times Co.,*
No. 00 Civ. 5666, 2004 U.S. Dist. LEXIS 14266 (S.D.N.Y. July 23, 2004) ................21, 22

*King v. N.Y. Tel. Co.,*
785 F.2d 31 (2d Cir. 1986) ...............................................................................................21

*Knight v. U.S. Fire Ins. Co.,*
804 F.2d 9 (2d Cir. 1986) ...................................................................................................9

*Kolivas v. Credit Agricole,*
No. 95 Civ. 5662, 1996 U.S. Dist. LEXIS 17478 (S.D.N.Y. Nov. 26, 1996) ...................13

*Komoroski v. Dep't of Consumer Prot.,*
No. 07 Civ. 2227, 2008 U.S. App. LEXIS 23419 (2d Cir. 2008) .......................................13

*LaBella v. N.Y. City Admin. for Children's Serv.,*
No. 02 Civ. 2355, 2005 U.S. Dist. LEXIS 18296 (S.D.N.Y. Mar. 11, 2005) ...................11

*Lightfoot v. Union Carbide Corp.,*
110 F.3d 898 (2d Cir. 1997) .............................................................................................25

*Mandell v. County of Suffolk,*
316 F.3d 368 (2d Cir. 2003) .............................................................................................10

*Marquez v. Screen Actors Guild Inc.,*
525 U.S. 33 (1999) .....................................................................................................21, 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ..........................................................................................................9

*Mayo v. Columbia Univ.,*
No. 01 Civ. 2002, 2003 U.S. Dist. LEXIS 5639 (S.D.N.Y. Apr. 7, 2003) .........................19

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) .........................................................................................................10

*McDowell v. Father Flanagan's Boys' Home,*
No. 03 Civ. 2058, 2005 U.S. Dist. LEXIS 8183 (E.D.N.Y. Apr. 26, 2005) ...................16, 17

*Okoro v. Marriott Int'l, Inc.,*
No. 07 Civ. 157, 2008 U.S. Dist. LEXIS 76880 (S.D.N.Y. Sept. 30, 2008)..........................9

*Parker v. Sony Pictures Entm't,*
260 F.3d 100 (2d Cir. 2001) ................................................................................................12

*Refino v. Feuer Transp., Inc.,*
480 F. Supp. 562 (S.D.N.Y. 1979) .......................................................................................25

*Rivera v. Potter,*
No. 03 Civ. 1991, 2005 U.S. Dist. LEXIS 1416 (S.D.N.Y. Jan. 31, 2005) ........................14

*Shannon v. N.Y.C. Transit Auth.,*
332 F.3d 95 (2d Cir. 2003) ..................................................................................................11

*Shumway v. UPS,*
118 F.3d 60 (2d Cir. 1997) ..................................................................................................15

*Sista v. CDC Ixis N. Am., Inc.,*
No. 02 Civ. 3470, 2005 U.S. Dist. LEXIS 2163 (S.D.N.Y. Feb. 15, 2005).........................19

*Spellacy v. Airline Pilots Ass'n-Int'l,*
156 F.3d 120 (2d Cir. 1998) ................................................................................................21

*St. Mary's Honor Ctr. v. Hicks,*
509 U.S. 502 (1993) ............................................................................................................10

*Texas Dep't of Cmty Affairs v. Burdine,*
450 U.S. 248 (1981) ............................................................................................................10

*Vaca v. Sipes,*
386 U.S. 171 (1967) ............................................................................................................22

*White v. White Rose Food,*
237 F.3d 174 (2d Cir. 2001) ................................................................................................23

*Wozniak v. Int'l Union, United Auto., etc., Local 897,*
842 F.2d 633 (2d Cir. 1988) ...........................................................................................22, 23

## STATUTES

Fed. R. Civ. P. 56(c)...............................................................................................................9

29 U.S.C. § 185(a)............................................................................................................ ..........2

N.Y. Exec. Law §§ 290 *et seq.*............................................................................................1

## PRELIMINARY STATEMENT

Defendant DHL Express (USA), Inc. ("DHL") respectfully submits this memorandum of law in support of its Motion for Summary Judgment to dismiss Plaintiff's Complaint (the "Complaint") in its entirety with prejudice. As set forth below, the Complaint should be dismissed because the undisputed material facts clearly demonstrate that Plaintiff was terminated for legitimate, non-discriminatory reasons as a result of Plaintiff's "theft of company time" – a terminable offense under the governing collective bargaining agreement – and, as such, he cannot support the essential elements of either of his claims against DHL.

This is a simple case that arises out of the termination of Plaintiff's employment as a driver with DHL for engaging in theft of company time. The undisputed evidence demonstrates that on October 9, 2006, Plaintiff had three separate unaccounted "gaps" in his time sheet, *i.e.*, periods of time during the paid work day for which Plaintiff did not perform any services, totaling more than three and a half hours, which, after a thorough investigation by DHL management, resulted in the termination of Plaintiff's employment. Not only did these excessive gaps provide DHL with a legitimate basis to terminate Plaintiff's employment under the governing collective bargaining agreement, but Plaintiff was on a "last chance agreement" for having committed the same offense just nine months earlier. Indeed, Plaintiff admitted that he understood the last chance agreement to mean that his employment would be immediately terminated if he committed a like offense – which is exactly what happened in this case.

Despite the undisputed evidence of his wrongdoing resulting in DHL's decision to terminate Plaintiff's employment, Plaintiff unsuccessfully attempts to allege that: (i) DHL discriminated against him in violation of the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* ("NYSHRL"), on the basis of his alleged disabilities, *i.e.*, depression and Celiac disease; and (ii) DHL and his former union, International Brotherhood of Teamsters, Local No. 295 ("Local

295" or the "Union"), violated Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185(a), for breaching the terms of the collective bargaining agreement ("CBA").

Plaintiff, however, has not been able to proffer any evidence (direct or circumstantial) that could possibly lead a jury to conclude that his alleged disabilities had any bearing on his termination. Indeed, Plaintiff cannot establish a *prima facie* case of disability discrimination because the record evidence clearly demonstrates that the termination of Plaintiff's employment was in no way connected to his disabilities. Not only did Plaintiff certify, in writing, on documents submitted to DHL and the Department of Transportation that he did *not* suffer from any disabilities, but Plaintiff's belief that he was discriminated against due to his disabilities by DHL rests solely on his subjective belief that he was treated differently than two non-disabled employees, neither of whom were on a "last chance agreement" when they were terminated for theft of company time and, thus, not similarly situated to Plaintiff. To the contrary, the record demonstrates that every employee at DHL's ISP station, as well as in Plaintiff's region, who engaged in theft of company time was treated in the exact same manner as Plaintiff. Further, even if Plaintiff could establish a *prima facie* case (which he cannot), DHL had a legitimate, non-discriminatory reason for terminating Plaintiff's employment – he engaged in theft of company time and violated his last chance agreement – and Plaintiff cannot prove otherwise. Thus, Plaintiff's claim for disability discrimination under the NYSHRL must fail as a matter of law.

Similarly, there is no evidence that DHL breached the terms of the CBA. Notwithstanding the fact that Plaintiff cannot possibly overcome his initial burden of demonstrating that Local 295 breached its duty of fair representation, Plaintiff was well aware that "theft of company time" is a Category "A" terminable offense under the CBA, as he had been terminated for committing the same offense on two prior occasions, one just nine months prior to his ultimate termination for which he was placed on a last chance agreement. Plaintiff signed the last chance agreement in January 2006 and admitted that he understood that under such agreement his employment would be immediately

terminated if he committed a similar offense.  In October 2006, just months later, Plaintiff again was caught stealing company time while on the last chance agreement, for which DHL terminated his employment.  As such, Plaintiff cannot possibly establish that DHL violated the CBA.

Based on the undisputed facts set forth below, Plaintiff's claims of disability discrimination under the NYSHRL and violation of the CBA pursuant to Section 301 lack merit in law and fact and must be dismissed in their entirety.

## STATEMENT OF FACTS[1]

Plaintiff was hired by DHL as a courier in 1985.  (Rule 56.1 ¶ 2).  At his request, Local 295 granted Plaintiff a "hardship transfer" in 2003, transferring Plaintiff to DHL's ISP facility in Ronkonkoma, New York (the "ISP station").  (Rule 56.1 ¶¶ 6-7).  As a driver, Plaintiff's job duties at the ISP station included delivering and helping to break down freight, delivering and picking up packages, scanning packages, and loading and unloading trucks.  (Rule 56.1 ¶ 10).  Plaintiff also was a shuttle driver at the ISP station.  (Rule 56.1 ¶ 11).  As a shuttle driver, he was responsible for taking an empty shuttle truck from the ISP station to DHL's JFK facility, to unload freight from an inbound airplane onto DHL's truck, and drive the freight back to the ISP station for sorting and delivering. (Rule 56.1 ¶ 11).

Plaintiff's regular shift was from 4 a.m. until 1 p.m., including his duties as a shuttle driver from 4 a.m. to 9 a.m.  (Rule 56.1 ¶ 12).  While Plaintiff was employed at the ISP station, Jeffrey Sidorski was his District Field Services Manager ("DFSM"), responsible for managing the operations of the entire ISP station.  (Rule 56.1 ¶ 8).  Plaintiff's supervisors while employed at the ISP station included Rocco Russo, Mike Garcia, John Wallace and Nick Dubanos.  (Rule 56.1 ¶ 9).

---

[1]     For brevity, DHL incorporates by reference the facts set forth in its 56.1 Statement but respectfully includes the following material facts in this memorandum of law.

**Collective Bargaining Agreement**

Plaintiff received a copy of the Collective Bargaining Agreement between Airborne Express, Inc. and Local 295 ("CBA"), which sets forth the grievance and arbitration procedures available to DHL employees, such as Plaintiff, who are members of the Local 295 bargaining unit. (Rule 56.1 ¶ 14). The CBA also enumerates the levels of discipline that DHL can impose on its employees who are members of Local 295. (Rule 56.1 ¶ 15). Specifically, the CBA categorizes "serious offenses" as Category "A" offenses that provide DHL with "just and sufficient cause for summary discharge." (Rule 56.1 ¶ 15). Among the offenses specified as Category "A" offenses is "theft," which has consistently been interpreted by both DHL and Local 295 to include "theft of time."[2] (Rule 56.1 ¶¶ 15-16). Plaintiff testified that his understanding of theft of company time is "not working when you were directed to work and doing something else." (Rule 56.1 ¶ 17).

**November 1994**

In November 1994, Plaintiff was terminated for theft of company time while he was working at the Westbury station. (Rule 56.1 ¶ 27). Specifically, Plaintiff admitted that he intentionally falsified his time records in an effort to be paid by DHL during periods in which he was at his home in Wantaugh and not working. (Rule 56.1 ¶ 27). The station manager, Gary Chardavoyne, terminated Plaintiff for falsifying his cartage records. (Rule 56.1 ¶ 27). Mr. Sidorski was in no way involved with the decision to terminate Plaintiff's employment at that time and had no role in the grievance process. (Rule 56.1 ¶ 27).

Plaintiff grieved the termination, which was upheld through each step of the grievance process under the CBA. (Rule 56.1 ¶ 28). Thereafter, Local 295 pursued Plaintiff's case to arbitration in front of Stanley Aiges, the long-time grievance arbitrator under the CBA (including predecessor agreements). (Rule 56.1 ¶ 28). Arbitrator Aiges found that Plaintiff engaged in theft of

---

[2]     An employee engages in theft of time where he or she "is not engaged in work during the period of time when he or she is being paid." (Rule 56.1 ¶ 17).

company time. (Rule 56.1 ¶ 29). Indeed, Plaintiff admitted that he was aware of the fact that Arbitrator Aiges found him "guilty of falsifying [his] cartage records, so as to steal time [that Plaintiff] should have spent performing work." (Rule 56.1 ¶ 29). Although Arbitrator Aiges acknowledged that Plaintiff's offense was one "which arbitrators universally uphold the discharge penalty," Plaintiff was reinstated and his termination was reduced to a time served suspension without pay because other employees at the Westbury station at or around that time had been treated less harshly for falsifying cartage reports. (Rule 56.1 ¶ 30). Plaintiff returned to work on March 6, 1995. (Rule 56.1 ¶ 30).

**Termination in January 2006 and Last Chance Agreement**

On January 4, 2006, Plaintiff took a DHL truck, without permission or notice, and left the ISP station, to a nearby Hess gas station, where he parked the truck and fell asleep while he was on the clock and being paid by DHL. (Rule 56.1 ¶ 32). At no time did Plaintiff notify, let alone receive permission from, DHL management to take a truck for personal reasons, and Plaintiff failed to notify management about his whereabouts. (Rule 56.1 ¶ 32). When DHL management tried to locate Plaintiff, Mr. Sidorski learned from a supervisor that a DHL truck was parked at a Hess gas station that DHL could not use to fill its trucks with fuel, and he sent two supervisors, Michael Mackey and Robert Giammarino, to investigate. (Rule 56.1 ¶ 33).

Upon arrival at the Hess station, Mr. Mackey knocked on the window of the parked truck, waking up Plaintiff. (Rule 56.1 ¶ 33). Plaintiff admitted he did not know how long he was sleeping. (Rule 56.1 ¶ 33). Mr. Mackey then instructed Plaintiff to return to the ISP station. (Rule 56.1 ¶ 34). When Plaintiff returned to the station, he left immediately without completing check-in requirements or informing anyone that he was leaving for the day. (Rule 56.1 ¶ 34). Plaintiff also failed to punch out for the day, despite the fact that DHL policy required Plaintiff to do so. (Rule 56.1 ¶ 34).

After calling in sick for two days, on January 7, 2006, Plaintiff returned to work and a thorough investigation was conducted into the January 4, 2006 incident at the Hess station. (Rule

5

56.1 ¶ 35).  As part of the investigation, Mr. Sidorski, Paul Blasucci, Shop Steward, and Austin

Cannon, Security Supervisor, conducted a meeting with Plaintiff in which Plaintiff attempted to

explain his misconduct.  (Rule 56.1 ¶ 35).  Pursuant to standard DHL practice, Plaintiff was then

taken out of service pending the outcome of the investigation.  (Rule 56.1 ¶ 35).

After further investigation, on January 9, 2007, Plaintiff was terminated for theft of

company time pursuant to the disciplinary provisions of the CBA.  (Rule 56.1 ¶ 36).  Local 295

pursued a grievance in connection with Plaintiff's termination, which was upheld at the Step 2

hearing on January 10, 2006.  (Rule 56.1 ¶ 37).  Subsequently, at the Step 3 hearing on January 19,

2006, Plaintiff's termination was reduced to a time served suspension.  (Rule 56.1 ¶ 37).  As part of

DHL's agreement with Local 295 for Plaintiff's reinstatement with an unpaid time served

suspension, Plaintiff signed a last chance agreement, which explicitly stated that the "Employee is

forewarned that any future incident of like kind will result in the employee's immediate termination."

(Rule 56.1 ¶¶ 37-38).  Plaintiff understood the ramifications of this agreement.  (Rule 56.1 ¶ 38).

**Final Termination in October 2006**

On October 9, 2006, after working his scheduled shift from 4 a.m. to 1 p.m., Plaintiff worked

an additional afternoon shift because the ISP station was short a few drivers.  (Rule 56.1 ¶ 40).  The

second shift was a pickup shift, during which time Plaintiff had a schedule of client pickups.  (Rule

56.1 ¶ 40).  Indeed, Plaintiff's pickup schedule was sent to him over his DHL scanner prior to his

shift, and included specific time windows that each pickup had to be completed.  (Rule 56.1 ¶ 40).

On that day, Plaintiff had three separate gaps in his manifest, which are times when work

was not performed, without management approval, when work was available and could have been

performed.  (Rule 56.1 ¶ 41).  Specifically, the first gap was 65 minutes, the second gap was 25

minutes, and the third and longest gap was 124 minutes.  (Rule 56.1 ¶ 42).  The first gap caused a

total of six express service failures, where Plaintiff failed to timely deliver packages.  (Rule 56.1 ¶

43).  The third gap was between 1:09 p.m. and 3:13 p.m.  (Rule 56.1 ¶ 44).  During this period,

Plaintiff did not perform any services for the Company, despite the fact that there were at least six packages that were ready for pickup and notwithstanding the fact that Plaintiff was on the clock and being paid overtime by DHL.  (Rule 56.1 ¶ 44).  Indeed, during this gap, Plaintiff failed to make two separate pickups during the scheduled pickup window and had to be located by the dispatcher when a customer called to complain that he was leaving for the day and his packages had not been picked up on time.  (Rule 56.1 ¶ 50).

The following day, the supervisors and managers at the ISP station received the gap report from October 9, 2006, which listed the largest gaps from that day, as they do every morning.  (Rule 56.1 ¶ 45).  Pursuant to daily practice, the supervisors and managers questioned the drivers who had the most gaps to determine whether the gaps were justified (*e.g.*, traffic accident, customer not ready, etc.).  (Rule 56.1 ¶ 46).  That morning, on October 10, 2006, John Wallace, Plaintiff's supervisor, spoke with Plaintiff about the gaps in his manifest as was the practice at the station.  (Rule 56.1 ¶ 47).  Plaintiff's explanations, however, contained inconsistencies and shifting explanations when his excuses could not be supported.  (Rule 56.1 ¶¶ 47-50).

The following day, Plaintiff attended a meeting at approximately 6:45 a.m. with Mr. Blasucci, Mr. Russo and Carlos Arostegui, Assistant Station Manager, in connection with DHL's investigation into Plaintiff's gaps.  (Rule 56.1 ¶ 51).  During that meeting, Plaintiff explained that during the first gap he was in the bathroom sick for 65 minutes, but has admitted that he failed to inform anyone at DHL about this purported sickness either while he was sick or thereafter.  (Rule 56.1 ¶ 51).  Plaintiff then explained that during the second gap he had returned to the ISP station and was told by Mr. Garcia to meet with another driver.  (Rule 56.1 ¶ 52).  Plaintiff further claimed that during the third gap he tried to reach another driver, but could not, and that he had no pickups ready, despite the uncontested and documented fact to the contrary.  (Rule 56.1 ¶ 53).  Plaintiff admitted that he did not notify anyone at DHL that he was not able to reach the other driver or that he

allegedly had no work to do.[3]  (Rule 56.1 ¶ 53).  At the end of the meeting, Plaintiff was issued a "Letter of Investigation" by Mr. Arostegui, which Plaintiff and Mr. Blasucci, as Shop Steward, signed.  (Rule 56.1 ¶ 54).  The letter informed Plaintiff that an investigation was being conducted into the gaps in his manifest that occurred on October 9, 2006.  (Rule 56.1 ¶ 54).

A second meeting was held on October 11, 2006, with Plaintiff, Messrs. Sidorski, Blasucci, and Arostegui, during which Plaintiff claimed that he was in the bathroom during the first gap because he had problems with his stomach and had severe hemorrhoids.  (Rule 56.1 ¶ 55).  Plaintiff explained that during the second gap he came back to the ISP station and that there was no additional work.  (Rule 56.1 ¶ 55).  Plaintiff also stated that he had contacted the other driver, who did not need help, so he waited for his pickups during the third gap, despite the fact that several were available.  (Rule 56.1 ¶¶ 50, 53).  At the end of that meeting, Plaintiff was terminated from his employment with DHL because the gaps of October 9, 2006 were deemed to be theft of company time.  (Rule 56.1 ¶ 56).  Not only was Plaintiff's theft of time a terminable offense under the CBA, but it violated his last chance agreement, executed only nine months earlier.  (Rule 56.1 ¶ 56).

Plaintiff's termination was upheld at both the Step 2 and Step 3 hearings because DHL had just cause for termination.  (Rule 56.1 ¶¶ 57-58).  At the Step 3 hearing – at which Plaintiff was represented by Vincent Bruno, Business Agent at Local 295 – Chris Sheedy, Regional Field Services Director, who had no role in the decision to terminate Plaintiff's employment, upheld the termination.  (Rule 56.1 ¶ 58).  On October 24, 2006, the Local 295 Executive Board, including Mr.

---

[3]     It deserves note that Plaintiff's claim that he suffered a nervous breakdown during the third gap was raised *for the first time* after the Step 3 decision to uphold his termination.  (Rule 56.1 ¶ 53). As Plaintiff concealed this excuse until *after* his termination was upheld through the grievance process, Messrs. Sidorski and Sheedy could not have been aware of this claim at the time of their decisions.

Bruno, voted not to take Plaintiff's case to arbitration.  (Rule 56.1 ¶ 59).[4]  Accordingly, Plaintiff's

termination was not taken to arbitration.

As set forth below, Plaintiff's evidence falls woefully short of supporting a claim of

disability discrimination or breach of the CBA under Section 301.  As such, DHL's motion for

summary judgment should be granted.

## LEGAL ARGUMENT

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties taken together "show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  A genuine issue of material fact exists only where "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  The moving party's burden is satisfied where, as here, such party can point to the

absence of evidence to support an essential element of the non-movant's claims.  *See Goenaga v.*

*March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  Although all facts are

construed in favor of the non-moving party, such party may not "rely on mere speculation or

conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v.*

*U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), but "must come forward with specific facts

showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586-88 (1986) (emphasis removed).  Only disputes over material facts – facts that

might affect the outcome of the suit under the governing law – will properly preclude the entry of

summary judgment.  *Okoro v. Marriott Int'l, Inc.*, No. 07 Civ. 157, 2008 U.S. Dist. LEXIS 76880, at

*13 (S.D.N.Y. Sept. 30, 2008) (citing *Anderson*, 477 U.S. at 248).

---

[4]     Plaintiff admitted that he knew that Mr. Bruno tried hard to get Plaintiff reinstated.  (Rule
56.1 ¶ 58).

As set forth below, Plaintiff's claims must be dismissed as a matter of law because the record evidence amply demonstrates a lack of any genuine issues as to any material fact that might affect the outcome of this lawsuit.

## II.   PLAINTIFF'S DISABILITY DISCRIMINATION CLAIM UNDER THE NYSHRL MUST FAIL

It is well-established that where, as here, Plaintiff has no direct evidence of discrimination and instead asserts that the employer's decision was a pretext for discrimination, courts use the well known *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973).[5] Under the *McDonnell Douglas* standard, the plaintiff must first present sufficient evidence to establish a *prima facie* case of disability discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Only if the plaintiff meets this initial burden will the burden then shift to the defendant to produce evidence that the adverse employment action was taken for some legitimate, non-discriminatory reason. *See Burdine*, 450 U.S. at 254-55. If the employer articulates a legitimate, non-discriminatory reason for its action, "the presumption raised by the *prima facie* case is rebutted, and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Burdine*, 450 U.S. at 255 n.10). Then, the plaintiff bears the ultimate burden to provide sufficient evidence to demonstrate that the articulated reason offered by the employer for the adverse employment action is merely a pretext for actual discrimination. *Mandell v. County of Suffolk*, 316 F.3d 368, 380-81 (2d Cir. 2003).

In this case, Plaintiff utterly fails to satisfy his *prima facie* burden and, moreover, cannot show that DHL's decision to terminate him for theft of company time – while on a last chance agreement – was a pretext for discrimination. Indeed, Plaintiff cannot show that his termination was in any way motivated by his alleged disabilities, particularly when Plaintiff affirmatively stated in

---

[5]     The *McDonnell Douglas* framework applies equally to analyzing claims of discrimination under the NYSHRL. *See, e.g., Ferraro v. Kellwood Co.*, 440 F.3d 96, 99-100 (2d Cir. 2006) (applying *McDonnell Douglas* framework to disability discrimination case brought under NYSHRL).

documents submitted to DHL and the Department of Transportation that he did *not* suffer from such disabilities and, further, admitted that he does not know how DHL discriminated against him on the basis of such disabilities. (Rule 56.1 ¶¶ 64, 67, 75). Even if Plaintiff could establish a *prima facie* case, he cannot point to a single piece of evidence to demonstrate that DHL's decision to terminate Plaintiff for theft of company time while on a last chance agreement was a pretext for disability discrimination. It is undisputed that Plaintiff was terminated from DHL for engaging in theft of company time – the same offense for which he was terminated only nine months earlier. (Rule 56.1 ¶¶ 36, 56). Furthermore, at the time of Plaintiff's termination, Plaintiff was on a "last chance agreement" that specifically provided that Plaintiff would be immediately terminated if he committed an offense of "like kind" in the future. (Rule 56.1 ¶¶ 38, 56). Accordingly, Plaintiff's disability discrimination claim must fail as a matter of law.

## A. Plaintiff Cannot Establish A *Prima Facie* Case Of Disability Discrimination

To survive a motion for summary judgment, Plaintiff must present sufficient evidence to establish a *prima facie* case of disability discrimination under the NYSHRL by demonstrating that: (1) DHL is subject to the NYSHRL; (2) Plaintiff suffers from a disability within the meaning of the NYSHRL; (3) he is otherwise qualified to perform his job; and (4) he suffered an adverse employment decision because of his disability. *See Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). Although DHL does not, for the purposes of this motion, dispute the first three elements, it is clear that Plaintiff cannot set forth any facts that would satisfy the final element of a *prima facie* showing of disability discrimination under the NYSHRL – *i.e.*, that a discriminatory motive played a role in DHL's decision to terminate him for stealing company time. *See LaBella v. N.Y. City Admin. for Children's Servs.*, No. 02 Civ. 2355, 2005 U.S. Dist. LEXIS 18296, at *47 (S.D.N.Y. Mar. 11, 2005) (finding that plaintiff did not meet burden of establishing *prima facie* case of disability discrimination where plaintiff "failed to present any evidence that defendant considered his disability in deciding to terminate his employment or that disability was one of the motivating

11

factors in defendant's decision"). Indeed, it is "essential to a finding of discrimination that plaintiff's disability, . . . played a 'substantial' role that 'made a difference' to his employer's actions." *Parker v. Sony Pictures Entm't*, 260 F.3d 100, 108 (2d Cir. 2001) (affirming summary judgment to defendant-employer) (citations omitted).

First, it is clear that DHL terminated Plaintiff's employment in October 2006 for stealing company time – not because he was suffering from any alleged depression or Celiac disease. Indeed, Plaintiff cannot demonstrate that his alleged disabilities played any role – let alone a motivating role – in DHL's decision to terminate his employment. Specifically, Plaintiff recalls being diagnosed with depression in or around 2001 or 2002, and Celiac disease in or around 2002. (Rule 56.1 ¶ 62). Plaintiff admitted, however, that he is not aware of any document in which he informed DHL that he suffered from depression or any digestive problems or Celiac disease. (Rule 56.1 ¶ 63). In fact, Plaintiff verified on at least three separate occasions, *in writing*, on his "Medical Examination Report for Commercial Driver Fitness Determination," that was submitted to the Department of Transportation for his commercial license, that he did *not* suffer from any illness or injury during the last five years, that he did *not* suffer from any digestive problems, and that he did *not* suffer from any nervous or psychiatric disorder, specifically, "severe depression."[6] (Rule 56.1 ¶¶ 64, 67).

Plaintiff's explanation for concealing his Celiac disease on his commercial license medical examination report was that he did not believe it was important. (Rule 56.1 ¶ 68). Similarly, Plaintiff testified that the reason he concealed his alleged depression from DHL and the government was because he felt that it was personal and did not feel disclosure was necessary. (Rule 56.1 ¶ 68). Plaintiff also verified that he was not taking any medication. (Rule 56.1 ¶ 67). As such, the only documented representations by Plaintiff about his alleged disabilities are those in which Plaintiff

---

[6]     Plaintiff submitted a "Medical Examination Report for Commercial Driver Fitness Determination" on June 21, 2005, that was identical to the one he submitted on May 15, 2003. (Rule 56.1 ¶ 67).

affirmatively stated to DHL and the Department of Transportation that he did *not* suffer from these disabilities. Thus, the evidence demonstrates that Plaintiff never even disclosed his alleged disabilities to DHL prior to his termination.

Second, even if Plaintiff can show that Jeffrey Sidorski, the decision maker, knew of Plaintiff's disabilities, Plaintiff cannot demonstrate a nexus between his termination and these alleged disabilities. Indeed, Plaintiff never disclosed his Celiac disease to DHL. (Rule 56.1 ¶ 69). Not only did Plaintiff admit that he could not recall telling anyone at DHL that he suffered from Celiac disease, but he also admitted that he did not know whether he was discriminated against because he had Celiac disease. (Rule 56.1 ¶ 71). In addition, Mr. Sidorski testified that it was not until Plaintiff's Step 3 hearing – several weeks *after* he decided to terminate Plaintiff's employment – that Plaintiff informed anyone at DHL that he allegedly suffered from Celiac disease. (Rule 56.1 ¶ 70). Thus, as a matter of law, Plaintiff's alleged Celiac disease could not have been a motivating factor in DHL's decision to terminate his employment. *See Barnett v. Revere Smelting & Ref. Corp.*, 67 F. Supp. 2d 378, 392 (S.D.N.Y. 1999) ("At a minimum, for there to be causation, the employer must have knowledge of the disability."); *Kolivas v. Credit Agricole*, No. 95 Civ. 5662, 1996 U.S. Dist. LEXIS 17478, at *13 (S.D.N.Y. Nov. 26, 1996) ("a plaintiff may not rely solely on a request that the factfinder disbelieve testimony about when an employer made the decision to fire the plaintiff; the plaintiff must offer the factfinder affirmative evidence to support a claim that a decisionmaker had knowledge of the disability when the decision to fire was made").

Similarly, Plaintiff cannot demonstrate that his depression played any role in Mr. Sidorski's decision to terminate him for theft of time. As a threshold matter, Mr. Sidorski testified that he was unaware that Plaintiff suffered from depression at the time he was terminated. (Rule 56.1 ¶ 72). Although Plaintiff testified that he informed Mr. Sidorski of his alleged depression, Plaintiff was unable to identify any details of such alleged disclosure. (Rule 56.1 ¶ 71); *see, e.g., Komoroski v. Dep't of Consumer Prot.*, No. 07 Civ. 2227, 2008 U.S. App. LEXIS 23419, at *3 (2d Cir. 2008)

(affirming grant of summary judgment where plaintiff "was obligated to allege *some* facts and *some* circumstances for the court to consider in reviewing her claim, but failed to do so") (emphasis in original).  Most tellingly, when asked whether Plaintiff had any evidence that DHL discriminated against him based on his alleged disabilities, Plaintiff admitted, "I'm not exactly sure how they did." (Rule 56.1 ¶ 75); *see Ivaniuc v. Hauer Knitting Mills, Inc.*, No. 94 Civ. 5909, 1998 U.S. Dist. LEXIS 21789, at *11-13 (E.D.N.Y. Feb. 10, 1998) (granting summary judgment to defendant where plaintiff testified that he did not know why he was terminated and "offered no evidence, besides his own self-serving conclusory statements, that contradict the evidence offered by" defendant); *Rivera v. Potter*, No. 03 Civ. 1991, 2005 U.S. Dist. LEXIS 1416, at *16 (S.D.N.Y. Jan. 31, 2005) ("Plaintiff only offers his own subjective belief concerning the motivation behind his termination, but his belief, standing alone, is insufficient to survive a motion for summary judgment.").

In addition, Mr. Bruno testified that during his own investigations into Plaintiff's termination for theft of time in January 2006, on behalf of Local 295, Plaintiff did not raise any alleged mental condition or other medical condition.[7]  (Rule 56.1 ¶ 73).  In fact, Mr. Bruno testified that he never knew that Plaintiff was being treated for depression, despite his close 20+ year friendship and business relationship with Plaintiff, and that it was not until after Plaintiff was terminated in October 2006 that he learned for the first time that Plaintiff suffered from depression.  (Rule 56.1 ¶ 72). Accordingly, Plaintiff cannot demonstrate a *prima facie* case of disability discrimination and his claim of disability discrimination should be dismissed as a matter of law.

**B.  There Is No Evidence That DHL Treated Any Similarly-Situated Employee Differently Than Plaintiff**

Even if the Court were to conclude that the decision maker was aware of either of Plaintiff's alleged disabilities, Plaintiff cannot possibly demonstrate that his disabilities played any role in the

---

[7]     Mr. Bruno also testified that he did not have any evidence or information that DHL or any managers at DHL were aware of any alleged mental or emotional disability of Plaintiff.  (Rule 56.1 ¶ 73).

decision to terminate his employment for theft of time, particularly in light of the last chance agreement.  Specifically, the sole basis offered by Plaintiff to support his claim of disability discrimination is his personal, subjective belief that he was treated differently "than other people who got caught doing the same thing." (Rule 56.1 ¶ 75).  Although the final element of a *prima facie* case may be satisfied by showing that similarly situated employees were treated differently, a purported comparator "must be similarly situated in all material respects." *See Shumway v. UPS*, 118 F.3d 60, 63-64 (2d Cir. 1997).  As such, any alleged comparator "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct." *Garcia Beauchat v. Mineta*, No. 03 Civ. 3196, 2006 U.S. Dist. LEXIS 67844, at *17-18 (E.D.N.Y. Sept. 21, 2006) (quotations and citations omitted).  As explained in greater detail below, Plaintiff cannot possibly make such a showing.

Plaintiff identified two other DHL employees, Tony Diomedis and Steve Avvento, as alleged comparators. (Rule 56.1 ¶ 76).  Plaintiff, however, cannot provide any competent evidence that Mr. Diomedis was caught stealing time, let alone disciplined in a disparate manner.[8] (Rule 56.1 ¶ 76). Mr. Avvento, on the other hand, was terminated for theft of time and subsequently reinstated during the grievance procedure – exactly the same treatment that Plaintiff received in January 2006 when he was caught stealing time at the ISP station. (Rule 56.1 ¶¶ 37, 80).  Significantly, Plaintiff admitted that neither Mr. Diomedis nor Mr. Avvento was on a last chance agreement at the time such alleged

---

[8]     Plaintiff testified that he believed that Mr. Diomedis had fallen asleep but had not been fired. (Rule 56.1 ¶ 77).  The basis for Plaintiff's belief is hearsay, *i.e.*, he heard from another driver after his termination – although he was unable to identify who – that Mr. Diomedis had fallen asleep, but he did not know where. (Rule 56.1 ¶ 77).  Plaintiff could not provide any details of Mr. Diomedis' alleged different treatment. (Rule 56.1 ¶ 77).  Indeed, Plaintiff admitted that he had not spoken to Mr. Diomedis, Gerry Gigante, the station manager, or anyone at Local 295, to support his belief that was formed on the basis of inadmissible hearsay from another unidentified driver. (Rule 56.1 ¶ 78).

15

incidents took place.  (Rule 56.1 ¶ 76).  In fact, Plaintiff is not able to identify a single DHL

employee who, while on a last chance agreement, subsequently committed a similar offense and was

not terminated.  (Rule 56.1 ¶ 81).  On this basis alone, Plaintiff's argument that Messrs. Diomedis

and Avvento were similarly situated to him cannot stand.  Indeed, these alleged comparators cannot

possibly be considered "similarly situated" to Plaintiff, whose termination was the result of

completely different circumstances – *i.e.*, having committed the same infraction, theft of time, for

which he was placed on a last chance agreement just months earlier.[9]

Further, Mr. Diomedis worked at a different DHL station in Farmingdale and he had a

different station manager than Plaintiff.  (Rule 56.1 ¶ 78).  It is undisputed that Mr. Sidorski was not

Mr. Diomedis' supervisor and had no role whatsoever in disciplinary decisions with respect to Mr.

Diomedis.  (Rule 56.1 ¶ 78).  Thus, Plaintiff cannot show that Mr. Diomedis was in any way

similarly situated to him.  *See Debidat v. Marriott Int'l, Inc.*, 580 F. Supp. 2d 300, 306 (S.D.N.Y.

2008) (finding comparator was not similarly situated to plaintiff where comparator "was in a

different department, had a different supervisor, and worked under different workplace guidelines").

With respect to Mr. Avvento, who worked at the ISP station, Plaintiff testified that he

believed Mr. Avvento had been terminated for theft of company time and then reinstated.  (Rule 56.1

¶ 79).  In fact, on September 29, 2006, DHL terminated Mr. Avvento's employment for theft of

company time for gaps in his manifest.  (Rule 56.1 ¶ 80).  At the Step 3 hearing, Mr. Avvento's

termination was reduced to a time served suspension – exactly how Plaintiff was treated during his

termination for theft of time in January 2006 when he was not on a last chance agreement.  (Rule

56.1 ¶¶ 37, 80).  The fact that Mr. Avvento was not treated more favorably than Plaintiff is fatal to

Plaintiff's claims.  *See McDowell v. Father Flanagan's Boys' Home*, No. 03 Civ. 2058, 2005 U.S.

---

[9]     It deserves note that the record demonstrates that each employee at the ISP station (including
Plaintiff), and in that station's region, who has been caught stealing company time has been
terminated.  (Rule 56.1 ¶ 82).

Dist. LEXIS 8183, at *20 (E.D.N.Y. Apr. 26, 2005) ("The fact that an employee outside the protected group engaged in similar behavior and was treated no more favorably than Plaintiff suggests that the decision was not motivated by discrimination and supplies an adequate basis for the Court to conclude that Plaintiff has failed to establish the fourth prong of his *prima facie* case."). Moreover, unlike Plaintiff's termination in October 2006, Mr. Avvento was not on a last chance agreement at the time of his termination and reinstated. (Rule 56.1 ¶ 76). In fact, Plaintiff admitted that he was not aware of any subsequent misconduct of theft of time by Mr. Avvento after Mr. Avvento was reinstated. (Rule 56.1 ¶ 80). As such, neither Mr. Diomedis nor Mr. Avvento is a reliable comparator since each is clearly not similarly situated to Plaintiff in any material respect, let alone "all material respects."

In a futile attempt to further bolster his claims, Plaintiff also identified three individuals whom he believed had been discriminated against by DHL because of their respective disabilities. (Rule 56.1 ¶ 83). However, the record demonstrates that none of these individuals is similarly-situated to Plaintiff.

Of these three individuals identified by Plaintiff, only one, Thomas O'Keefe, allegedly suffered from a disability similar to Plaintiff.[10] Plaintiff testified that he believed Mr. O'Keefe, who worked at DHL's Farmingdale facility and *not* the ISP station, had been discriminated against because of his depression when his supervisors, Chris Wyler and Gerry Gigante, allegedly terminated him for no reason. (Rule 56.1 ¶ 84). Plaintiff, however, was unable to provide any details to support his generalized accusation, and admitted that Mr. O'Keefe was reinstated every time. (Rule 56.1 ¶ 84). Indeed, although Mr. O'Keefe allegedly sought advice from Plaintiff's attorneys, he never pursued any claim of discrimination. (Rule 56.1 ¶ 84). Moreover, as Mr. O'Keefe was located at a

---

[10]     It deserves note that the only evidence in the record of Mr. O'Keefe's alleged depression is Plaintiff's testimony, which amounts to nothing more than uncorroborated hearsay. (Rule 56.1 ¶¶ 77-78).

different station, Mr. Sidorski was not Mr. O'Keefe's supervisor and had no role whatsoever in the alleged disciplinary decisions with respect to Mr. O'Keefe. (Rule 56.1 ¶ 85). As such, Mr. O'Keefe is not even a comparator of Plaintiff and cannot support Plaintiff's claim of disability discrimination. *See Garcia Beauchat*, 2006 U.S. Dist. LEXIS 67844, at *17-18.

Plaintiff also testified that Vincent Fusco, who worked at the ISP station and had a heart problem, had been told by Mr. Sidorski the day prior to undergoing heart surgery that he would be terminated if he did not find a lost package. (Rule 56.1 ¶¶ 83, 86). Plaintiff admitted, however, that Mr. Fusco had not been terminated, and that he does not know whether DHL took any adverse employment action against him. (Rule 56.1 ¶ 86). Thus, Mr. Fusco was not similarly-situated to Plaintiff in any material respect.

Finally, Plaintiff identified a driver named "Jimmy" who allegedly suffered from Tay-Sachs disease. (Rule 56.1 ¶ 83). Plaintiff testified that he believed "Jimmy" had been discriminated against when DHL allegedly told him that he had to take a certain route, which required him to be in his truck for three hours straight. (Rule 56.1 ¶ 87). Plaintiff admitted that Tay-Sachs disease was a disability that was completely different from his own alleged disabilities and the purported adverse treatment of "Jimmy" was entirely different that that alleged by Plaintiff.[11] (Rule 56.1 ¶ 87). As such, "Jimmy" was not similarly-situated to Plaintiff.

For the foregoing reasons, Plaintiff cannot possibly satisfy his *prima facie* burden of showing that he was treated differently than any similarly situated employee, or that any individual with similar disabilities to his were also discriminated against by DHL. As such, Plaintiff's disability discrimination claim must fail as a matter of law.

## C. DHL Had A Legitimate, Non-Discriminatory Reason For Terminating Plaintiff

Even if Plaintiff could establish a *prima facie* case of disability discrimination, which he

---

[11]    In addition, Messrs. Sidorski and Bruno both testified that the driver identified by Plaintiff was taken out of service because he could not perform his job anymore. (Rule 56.1 ¶ 87).

cannot, summary dismissal is still appropriate because Plaintiff cannot rebut DHL's legitimate business reason for terminating his employment or show that his termination was a pretext for unlawful discrimination. Here, "Plaintiff's actions provided a reasonable basis to terminate his employment. . . . Plaintiff's behavior was simply conduct which an employer could legitimately determine was inappropriate and unacceptable in the workplace." *Sista v. CDC Ixis N. Am., Inc.*, No. 02 Civ. 3470, 2005 U.S. Dist. LEXIS 2163, at \*19-20 (S.D.N.Y. Feb. 15, 2005). Indeed, "[i]t is not appropriate to second-guess business decisions or to question a corporation's means to achieve a legitimate goal." *Fiscina v. N.Y.C. Dist. Council of Carpenters*, 401 F. Supp. 2d 345, 357 (S.D.N.Y. 2005) (citations and internal quotations omitted) (granting defendant's motion for summary judgment where court found plaintiff "has done little more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to his [membership in a protected class]").

As the record evidence clearly demonstrates, DHL had a legitimate, non-discriminatory business reason for terminating Plaintiff's employment. Specifically, Plaintiff was terminated for theft of company time, after a thorough investigation into his significant "gaps" – totaling more than three and a half hours – on October 9, 2006, which resulted in six service failures and two pickups outside the scheduled pickup window. (Rule 56.1 ¶¶ 43, 50). Not only did Plaintiff commit a Category "A" terminable offense as clearly defined under the CBA, but he was on last chance agreement for having committed a nearly identical offense in January 2006. (Rule 56.1 ¶¶ 15-16, 37-38, 56). Although Plaintiff admitted that he understood that the last chance agreement meant that "any future incident of like kind will result in the employee's immediate termination" – he committed the same offense just nine months later for which he was terminated. (Rule 56.1 ¶ 56). These facts are fatal to his claims. *See Mayo v. Columbia Univ.*, No. 01 Civ. 2002, 2003 U.S. Dist. LEXIS 5639, at \*6-7 (S.D.N.Y. Apr. 7, 2003) (dismissing plaintiff's ADA claim where defendant had legitimate-non-discriminatory reason for terminating plaintiff when she failed to comply with terms of return to work agreement) (collecting last chance agreement-based termination cases).

In light of the fact that DHL terminated Plaintiff for legitimate, non-discriminatory reasons –
Plaintiff's commission of a Category "A" terminable offense and his blatant violation of his last
chance agreement – Plaintiff cannot possibly demonstrate that DHL's termination of his employment
was a pretext for unlawful discrimination on the basis of his alleged disabilities.  Thus, his disability
discrimination claim must be dismissed as a matter of law.

### III.   PLAINTIFF'S HYBRID § 301 CLAIM FAILS AS A MATTER OF LAW

Plaintiff's claims against DHL and Local 295 under Section 301 of the Labor Management
Relations Act ("Section 301") consist of two separate claims: one against DHL for an alleged breach
of the collective bargaining agreement, pursuant to Section 301, and one against Local 295 for breach
of the Union's duty of fair representation.  *See Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151,
164-65 (1983).  To establish a Section 301 claim against DHL, Plaintiff must first overcome his
initial burden of demonstrating that Local 295 breached its duty of fair representation – which he
cannot.  If Local 295 is granted summary judgment with respect to Plaintiff's duty of fair
representation claim against it, then Plaintiff's claim against DHL for breach of the collective
bargaining agreement as a matter of law must fail.  Indeed, the two claims are "inextricably
interdependent."  *Id.*

Even assuming *arguendo* that summary judgment is denied to Local 295, and Plaintiff is
somehow able to reach the question of DHL's alleged breach, there is no evidence in the record that
could support such a claim.  Indeed, the CBA is clear that "theft" is a Category "A" terminable
offense.  (Rule 56.1 ¶ 15).  Plaintiff was well-aware of this fact, having grieved the termination of his
employment for theft of company time on two prior occasions, including in 1995, during which the
arbitrator specifically stated, in writing, that the offense was one "for which arbitrators universally
uphold the discharge penalty."  (Rule 56.1 ¶ 30).  Moreover, Plaintiff cannot show that a termination
for theft of company time has *ever* been found to violate the CBA.

**A.    Plaintiff Cannot Overcome His Initial Burden Of Establishing That Local 295 Breached Its Duty Of Fair Representation**

As a threshold matter, to establish a Section 301 claim, Plaintiff must first establish that Local 295 breached its duty of fair representation in its handling of Plaintiff's grievance. *See Chauffers, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990). Then, and only then, can Plaintiff seek to demonstrate that DHL breached the CBA. *See King v. New York Tel. Co.*, 785 F.2d 31, 36 n.2 (2d Cir. 1986) ("It is not until a union breaches its duty of fair representation that an employee has all the necessary elements of a claim against the employer for breach of contract."). Indeed, "[w]here, it is shown that the union fairly represented the employee, the suit against the employer cannot stand.'" *Kavowras v. N.Y. Times Co.*, No. 00 Civ 5666, 2004 U.S. Dist. LEXIS 14266, at *22 (S.D.N.Y. July 23, 2004) (citation omitted).

To establish a breach of the duty of fair representation, Plaintiff must demonstrate that Local 295's conduct: (1) was "arbitrary, discriminatory, or in bad faith," *Marquez v. Screen Actors Guild. Inc.*, 525 U.S. 33, 44 (1999), and (2) "seriously undermined the integrity of the arbitral process." *Kavowras*, 2004 U.S. Dist. LEXIS 14266, at *22 (quoting *Hines v. Anchor Motor Freight. Inc.*, 424 U.S. 554, 567 (1976)). "Under this standard, any substantive examination of a union's performance . . . must be highly deferential." *Kavowras*, 2004 U.S. Dist. LEXIS 14266, at *22-23 (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)).

Under the first element of the test, Local 295's actions can be considered arbitrary *only* if its behavior is so far outside a "wide range of reasonableness . . . as to be irrational" in light of the factual and legal landscape at the time of the union's actions. *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 129 (2d Cir. 1998) (quoting *Air Line Pilots*, 499 U.S. at 67). "This wide range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez*, 525 U.S. at 45 (internal quotations omitted). Accordingly, "a union's purported breach cannot be based on mere negligence or tactical errors,"

*Kavowras*, 2004 U.S. Dist. LEXIS 14266, at \*23 (citing *Barr v. United Parcel Serv.*, 868 F.2d 36, 43 (2d Cir. 1989)), and "as long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage." *Cook v. Pan Am. World Airways, Inc.*, 771 F.2d 635, 645 (2d Cir. 1985) (internal quotation marks and citation omitted).  Indeed, to survive summary judgment, Plaintiff must show that Local 295's decision to forgo arbitration was "so far outside a wide range of reasonableness" as to be irrational, in light of the factual and legal landscape at the time Local 295 chose its course of action. *Marquez*, 535 U.S. at 44.  Plaintiff has utterly failed to do so.

In the first instance, there is no evidence that Local 295 acted arbitrarily, capriciously, or in bad faith in handling Plaintiff's grievance.  To the contrary, the record demonstrates that Local 295 thoroughly investigated Plaintiff's grievance and acted in good faith when it decided not to arbitrate Plaintiff's grievance.  (Rule 56.1 ¶¶ 58-59).  Plaintiff himself testified that he did not know why Local 295 decided not to take his case to arbitration, and admitted that reasonable people could disagree as to whether he would have prevailed if his grievance was submitted to arbitration.  (Rule 56.1 ¶ 60).  Plaintiff further admitted that he knew that Mr. Bruno tried hard to get Plaintiff reinstated.  (Rule 56.1 ¶ 58).

In addition, Mr. Bruno presented the facts of Plaintiff's case to the Local 295 Executive Board, including the reason for his termination, Plaintiff's explanation for the gaps in his manifest, and the fact that Plaintiff had been on a last chance agreement at the time of his termination.  (Rule 56.1 ¶ 59).  On October 24, 2006, the Local 295 Executive Board, including Mr. Bruno, voted not to take Plaintiff's case to arbitration.  (Rule 56.1 ¶ 59).  Indeed, an employee does not have an absolute right to have his grievance presented for arbitration. *See Vaca v. Sipes*, 386 U.S. 171, 191 (1967).  In fact, a union is under no obligation to arbitrate what it believes to be a meritless grievance as "[t]here is no arbitrariness in failing to process a bad case." *Wozniak v. Int'l Union, United Auto., etc., Local 897*, 842 F.2d 633, 636 (2d Cir. 1988) (finding union's decision not to pursue plaintiff's grievance

reasonable where plaintiff brought loaded firearm to work) (citing *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1214-15 (9th Cir. 1980)).

Not only does Local 295's conduct demonstrate its good faith efforts on behalf of Plaintiff, but Plaintiff himself admitted that he did not know whether Local 295 was treating him differently than anyone else in that same situation and, further, that he did not have any evidence to show that Local 295 acted inconsistently with respect to Plaintiff's case. (Rule 56.1 ¶ 60). In fact, Plaintiff admitted that he knew that Mr. Bruno tried hard to get him reinstated. (Rule 56.1 ¶ 58). As such, Plaintiff cannot show that Local 295 acted in any manner other than in good faith. On the basis of these facts, it cannot be disputed that Local 295 satisfied its duty to fairly represent Plaintiff.

Since Plaintiff cannot make the requisite threshold showing that Local 295 breached its duty of fair representation necessary to sustain his hybrid Section 301 claim, this Court need not go any further in its analysis. *See White v. White Rose Food*, 237 F.3d at 174, 183 n.13 (2d cir. 2001) (holding that since plaintiffs failed to establish their duty of fair representation claim, there was no need to reach merits of their § 301 claim).

**B.     DHL Acted In Accordance With The CBA And Plaintiff Cannot Prove Otherwise**

Even if Plaintiff is able to overcome his initial burden against Local 295 – which he cannot – to even reach the question of DHL's alleged breach of the CBA, there is not a scintilla of evidence to support Plaintiff's claim that DHL violated the CBA when it terminated his employment for theft of company time. The CBA clearly categorizes "theft" as a Category "A" terminable offense, and Plaintiff cannot demonstrate that a termination for theft of company time has *ever* been found to violate the CBA. (Rule 56.1 ¶¶ 15-16). Indeed, the record evidence dispositively demonstrates that every driver caught stealing company time at the ISP station, and in Plaintiff's region, has been terminated for such misconduct. (Rule 56.1 ¶ 82). Moreover, Plaintiff had sufficient notice that theft of company time was a terminable offense under the CBA. (Rule 56.1 ¶ 26, 30, 36). Not only was

23

he terminated in January 2006 for theft of company time, but in 1995, Plaintiff grieved an additional termination for theft of company time, during which the arbitrator specifically stated, in writing, that theft of company time "is an offense for which arbitrators universally uphold the discharge penalty." (Rule 56.1 ¶ 30). Plaintiff has not – and cannot – prove otherwise.

Plaintiff was terminated a total of four times while employed at DHL, including three for theft of company time. (Rule 56.1 ¶ 26). As set forth below, on January 4, 2006 – just nine moths prior to his final termination – Plaintiff took a DHL truck, without permission or notice, and left the ISP station and drove the DHL truck to a nearby Hess gas station, where he parked the truck and fell asleep while he was on the clock and being paid by DHL. (Rule 56.1 ¶ 32). At no time did Plaintiff notify, let alone receive permission from, DHL management to take a truck for personal reasons, and Plaintiff failed to notify management about his whereabouts. (Rule 56.1 ¶ 32). When Plaintiff's supervisor instructed Plaintiff to return to the station, Plaintiff returned to the station, but left immediately without completing check-in requirements or informing anyone that he was leaving for the day. (Rule 56.1 ¶ 34). Plaintiff also failed to punch out for the day, despite the fact that DHL policy required Plaintiff to do so. (Rule 56.1 ¶ 34).

After a thorough investigation, on January 9, 2007, Plaintiff was terminated for theft of company time pursuant to the disciplinary provisions of the CBA. (Rule 56.1 ¶ 36). During the grievance process, Plaintiff's termination was upheld at the Step 2 hearing, but was later reduced to a time served suspension at the Step 3 hearing. (Rule 56.1 ¶ 37). As part of DHL's agreement with Local 295 for Plaintiff's reinstatement with an unpaid time served suspension, Plaintiff signed a last chance agreement. (Rule 56.1 ¶ 37). The last chance agreement signed by Plaintiff explicitly stated that "Employee is forewarned that any future incident of like kind will result in the employee's immediate termination." (Rule 56.1 ¶ 38). Plaintiff understood the ramifications of this agreement. (Rule 56.1 ¶ 38). Therefore, it is undisputed that Plaintiff was on notice that theft of company time was a terminable offense.

24

Nevertheless, on October 9, 2006 – only nine months later – Plaintiff had three gaps in his manifest totaling more than three and a half hours.  (Rule 56.1 ¶ 41).  Specifically, the first gap was 65 minutes, the second gap was 25 minutes, and the third and longest gap was 124 minutes.  (Rule 56.1 ¶ 42).  These gaps caused a total of six service failures and two pickups being made outside the scheduled pickup window.  (Rule 56.1 ¶¶ 43, 50).  Plaintiff admitted that he concealed such service failures from DHL until his supervisors confronted him the following day with the gap report.  (Rule 56.1 ¶¶ 43, 45-47).  And when DHL investigated the gaps, Plaintiff was unable to provide a satisfactory explanation.  (Rule 56.1 ¶¶ 47-53).  As a result, on October 11, 2006, Plaintiff was terminated from his employment with DHL because the gaps of October 9, 2006 were deemed to be theft of company time.  (Rule 56.1 ¶ 56).  Not only was Plaintiff's theft of time a terminable offense under the CBA, but it violated his last chance agreement, executed just months earlier.  (Rule 56.1 ¶ 56).

Plaintiff initiated grievance proceedings on October 11, 2006, and the termination was ultimately upheld at the Step 3 hearing.  (Rule 56.1 ¶¶ 58-59).  The evidence is clear that after a thorough investigation, DHL terminated Plaintiff for engaging in theft of company time – a terminable offense under the CBA – for which Plaintiff was already placed on a last chance agreement.  As such, Plaintiff can offer no evidence to support his claim that DHL violated the CBA and his claim must be dismissed as a matter of law.

## IV.    PLAINTIFF'S REQUESTED RELIEF SHOULD BE DISMISSED

In his Complaint, Plaintiff requests as part of his Prayer for Relief punitive damages and attorneys' fees.  However, it is clear that neither the NYSHRL nor Section 301 provide for such remedies.  *See, e.g., Farias v. Instructional Sys.*, 259 F.3d 91, 101 (2d Cir. 2001); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997); *Refino v. Feuer Transp., Inc.*, 480 F. Supp. 562, 567-68 (S.D.N.Y. 1979), *aff'd*, 633 F.2d 205 (2d Cir. 1980).  As such, Plaintiff's requested relief should be dismissed as a matter of law.

## CONCLUSION

In light of the foregoing, Defendant DHL's Motion for Summary Judgment should be granted, in its entirety, and Plaintiff's Complaint should be dismissed with prejudice.[12]

Dated:  New York, New York
        February 20, 2009

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: _____
        Andrew S. Goodstadt
        Cindy E. Uh

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845

*Counsel for Defendant DHL Express (USA), Inc.*

---

[12]     In the event the Court dismisses Plaintiff's Section 301 claim and not his claim against DHL under the NYSHRL, DHL respectfully requests that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law disability discrimination claims, as Plaintiff will no longer have original jurisdiction over any remaining claims.

## CERTIFICATE OF SERVICE

I hereby certify that a true and copy of the foregoing Memorandum of Law in Support of Defendant's Motion for Summary Judgment, dated February 20, 2009, was served via overnight delivery, this 20th day of February 2009, upon the following counsels:

To:    Kosta K. Kollef, Esq.
Law Office of Michael G. O'Neill
30 Vesey Street, 3rd Floor
New York, New York 10007

*Counsel for Plaintiff Dino Paladino*

Joshua S.C. Parkhurst, Esq.
Cary Kane LLP
1350 Broadway, Suite 815
New York, New York 10018

*Counsel for Defendant International Brotherhood of Teamsters Air Freight Chauffeurs, Handlers, Warehousemen & Allied Workers Union No. 295*

_____
Cindy E. Uh

Dated: New York, New York
February 20, 2009