**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
DINO PALADINO,                                    :
                                                  :
                              Plaintiff,          :          07 Civ. 1579 (DRH) (ARL)
                                                  :
              - against -                         :
                                                  :
DHL (USA), INC. AND                               :
INTERNATIONAL BROTHERHOOD OF                      :
TEAMSTERS AIR FREIGHT CHAUFFEURS,                 :
HANDLERS, WAREHOUSEMEN & ALLIED                   :
WORKERS UNION NO. 295,                            :
                                                  :
                              Defendants.         :
----------------------------------------------------------------X


## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## DHL EXPRESS (USA), INC.'S MOTION FOR SUMMARY JUDGMENT

THOMPSON WIGDOR & GILLY LLP
Andrew S. Goodstadt
Cindy E. Uh
85 Fifth Avenue
New York, NY 10003
Telephone:   (212) 257-6800
Facsimile:   (212) 257-6845

*Counsel for Defendant DHL Express (USA),Inc.*

<u>**TABLE OF CONTENTS**</u>

**Page**

**TABLE OF AUTHORITIES** ........................................................................................ ii

**PRELIMINARY STATEMENT** ................................................................................1

**LEGAL ARGUMENT** ...............................................................................................2

I.    THE COURT SHOULD DISREGARD THE SELF-SERVING
      DELCARATION OF PLAINTFF THAT CONTRADICTS HIS
      PRIOR TESTIMONY ........................................................................................2

II.   PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE
      OF DISABILITY DISCRIMINATION ..............................................................4

      A.  Plaintiff's Alleged Disabilities Were Not A Motivating Factor For
          His Termination .........................................................................................4

III.  PLAINTIFF'S VIOLATION OF THE LAST CHANCE
      AGREEMENT IS A LEGITIMATE, NON-DISCRIMNATORY
      REASON FOR HIS DISCHARGE ....................................................................6

      A.  Plaintiff Cannot Rebut That He Was Terminated For Engaging In
          Theft Of Company Time While On A Last Chance Agreement ................7

      B.  It Is Undisputed That "Theft of Company Time" Is A Category A
          Terminable Offense ...................................................................................9

IV.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF A
      FAILURE TO ACCOMMODATE .................................................................10

V.    PLAINTIFF'S HYBRID 301 CLAIM SHUOLD BE DISMISSED .............13

**CONCLUSION** .......................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Borkowski v. Valley Cent. Sch. Dist.*,
63 F.3d 131 (2d Cir. 1995)..............................................................................................12

*Cusack v. News America Marketing In-Store Servs. L.L.C.*,
No. 06. Civ. 6166 (GEL), 2008 U.S. Dist. LEXIS 50610 (S.D.N.Y. July 2, 2008) .....................10

*Davis v. Pitney Bowes*,
No. 95 Civ. 4765 (LAP), 1997 U.S. Dist. LEXIS 16258 (S.D.N.Y. Oct. 20, 1997) ...................12

*Durant v. A.C.S. State & Local Solutions, Inc.*,
460 F. Supp. 2d 492 (S.D.N.Y. 2006)..............................................................................2

*Flaherty v. Filardi*,
No. 03 Civ. 2167 (LTS) (HBP), 2007 U.S. Dist. LEXIS 69202 (S.D.N.Y. Sept. 17, 2007)..........2

*Golden v. Merrill Lynch & Co.*,
No. 06 Civ. 2970 (RWS), 2007 U.S. Dist. LEXIS 90106 (S.D.N.Y. Dec. 6, 2007) .....................4

*Hayes v. Estee Lauder Cos., Inc.*,
34 A.D.3d (2d Dep't 2006)..............................................................................................11

*Hayes v. New York City Dep't of Corrections*,
84 F.3d 614 (2d Cir. 1996)..............................................................................................2

*Jackan v. New York State Dep't of Labor*,
205 F.3d 562 (2d Cir. 2000)..............................................................................................12

*Kalra v. HSBC Bank U.S., N.A.*,
567 F. Supp. 2d 385 (E.D.N.Y. 2008) ..............................................................................2

*Murphy v. Potter*,
No. 06 Civ. 1989 (JFB)(AKT), 2008 U.S. Dist. LEXIS 46183 (E.D.N.Y. June 12, 2008)............8

*Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*,
303 Fed. Appx. 943 (2d Cir. Dec. 22, 2008) ..............................................................11

*Parker v. Sony Pictures, Entm't, Inc.*,
260 F.3d 100 (2d Cir. 2001)..............................................................................................10

*Rhuling v. Tribune Co.*,
No. 04 Civ. 2430 (ARL), 2007 U.S. Dist. LEXIS 116 (E.D.N.Y. Jan. 3, 2007) ..........................10

*Simmons v. New York City Transit Auth.,*
No. 02 Civ. 1575 (CPS), 2008 U.S. Dist. LEXIS 54872 (E.D.N.Y. July 17, 2008)......................12

*Tully-Boone v. North Shore-Long Island Jewish Hosp. Sys.,*
588 F. Supp. 2d 419 (E.D.N.Y. 2008) .........................................................................................13

## STATUTES

28 U.S.C.S. § 1746............................................................................................................................2

N.Y. Exec. Law §§ 296(1)(a)...........................................................................................................10

DHL Express (USA), Inc. ("DHL" or the "Company"), respectfully submits this Reply Memorandum of Law in further support of its Motion for Summary Judgment to dismiss Plaintiff's Complaint (the "Complaint") in its entirety with prejudice.

## PRELIMINARY STATEMENT

Plaintiff's opposition to summary judgment further confirms the absence of evidence supporting his conclusory allegations against DHL, and that he has failed to establish even a *prima facie* case of disability discrimination or a violation of Section 301 of the Labor Management Relations Act ("Section 301"). Indeed, the uncontroverted evidence demonstrates that Plaintiff was terminated for theft of company time – the same offense for which he was placed on a last chance agreement just nine months earlier – and not because of any alleged disabilities.

Unable to rebut the record evidence that establishes DHL's legitimate, non-discriminatory business reasons for his termination, Plaintiff attempts to create a subterfuge through mere speculation and conjecture, as well as *ad hominem* attacks on counsel regarding discovery, in an effort to divert the Court's attention from the record evidence.[1] To that end, Plaintiff wastes considerable energy on issues that are immaterial to his claims to create the appearance of genuine issues of fact for trial, where none exist. For example, Plaintiff attempts to manipulate the record to make it appear as if no other driver at the ISP station or in Plaintiff's region was terminated for theft of company time. Amazingly, Plaintiff does not even address his own burden of establishing a *prima facie* case of disability discrimination, focusing exclusively on DHL's burden to provide a legitimate, non-discriminatory reason for his termination. When all is said and done, however, it remains

---

[1] It deserves note that the *first* time Plaintiff raised any issue with DHL's production was on February 26, 2009 – more than six months after DHL produced the documents at issue, three months after the close of fact discovery, and a week after DHL served its Motion for Summary Judgment on Plaintiff. *See* Declaration of Kosta Kollef ("Kollef Decl."), Ex. L. DHL vehemently disputes Plaintiff's distorted account of discovery in this case and respectfully refers the Court to the Declaration of Andrew S. Goodstadt in Response to Michael O'Neill's Declaration in Opposition to Defendants' Summary Judgment Motion (which is the subject of a motion to strike).

undisputed that Plaintiff was terminated for engaging in "theft of company time" – a terminable offense under the governing collective bargaining agreement – and, as such, he has failed to satisfy the essential elements of either of his claims against DHL.

As set forth below, Plaintiff has failed to provide any competent evidence that raises a genuine issue of material fact. The Court should therefore grant DHL's summary judgment motion and dismiss Plaintiff's Complaint in its entirety.

## ARGUMENT

### I. THE COURT SHOULD DISREGARD THE SELF-SERVING DECLARATION OF PLAINTIFF THAT CONTRADICTS HIS PRIOR TESTIMONY

Plaintiff, in a transparent attempt to create material factual disputes where none exist, submits a self-serving declaration that is flatly contradicted by his deposition testimony and cannot be used to defeat DHL's summary judgment motion.[2] It is well-established that "[a] party may not create an issue of fact by submitting an affidavit in opposition to summary judgment that, by omission or addition, contradicts the affiant's previous deposition testimony." *Flaherty v. Filardi*, No. 03 Civ. 2167, 2007 U.S. Dist. LEXIS 69202, at *21-22 (S.D.N.Y. Sept. 17, 2007) (quoting *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619-20 (2d Cir. 1996)); *see also Kalra v. HSBC Bank U.S., N.A.*, 567 F. Supp. 2d 385, 397 (E.D.N.Y. 2008); *Durant v. A.C.S. State & Local Solutions, Inc.*, 460 F. Supp. 2d 492, 494 (S.D.N.Y. 2006). Not only does the evidentiary record in this case amply demonstrate that Plaintiff's alleged disabilities had absolutely no connection (let alone a motivating one) to his termination, but it also establishes that his termination was based on legitimate, non-discriminatory reasons. In light of the undisputed facts in this case, the Court should disregard the contradictory testimony presented by Plaintiff to manufacture factual issues. *See*

---

[2] As an initial matter, Plaintiff's unsworn declaration should be disregarded by the Court as it does not indicate that the declaration is "true and correct" and, as such, fails to comply with the requirements under 28 U.S.C.S. § 1746.

*Flaherty*, 2007 U.S. Dist. LEXIS 69202, at *21-22 (explaining that "[f]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial").

While immaterial to Plaintiff's disability discrimination claim, Plaintiff asserts a number of facts that directly contradict his deposition testimony.[3] Most telling is Plaintiff's assertion in his declaration that he asked DHL to take his "physical and mental impairments into account as DHL evaluated whether and to what degree it should discipline" him. Paladino Decl. ¶ 11. In stark contrast, when directly asked if he had requested an accommodation in light of his alleged illnesses at any time during his employment with DHL, he replied, "Not that I remember." *See* Exhibit AAA at 310:11-15 attached to the Reply Declaration of Andrew S. Goodstadt ("Goodstadt Reply Decl."). Similarly, when Plaintiff was asked about three separate months in 2005 when he received discipline for his poor attendance, he did not mention informing DHL during these disciplinary processes that his alleged disabilities were the cause of his attendance issues, let alone ask DHL to take such reasons into consideration when making disciplinary decisions. *See* Goodstadt Reply Decl., Ex. BBB at 184:22-193:5. In fact, Plaintiff explicitly testified that he did *not* believe that the letter of discipline for attendance violations he received in April 2005 was in any way discriminatory, and that he did not know whether the letter he received in August 2005 for the violations was

---

[3]       By way of example only, Plaintiff now appears to recall detailed facts about how his alleged depression affected his work performance. Paladino Decl. ¶¶ 5-6. He states in his declaration that he was, among other things, "often sad and had a depressed demeanor at work, moping about, appearing fatigued and sleepy, [and] taking days off from work." *Id.* ¶ 5. These newly alleged details were omitted during his deposition when Plaintiff was specifically asked how his alleged depression affected his work performance. *See* Goodstadt Reply Decl., Ex. CCC at 311:20-312:12. Indeed, Plaintiff responded, "I am sure it did, but I don't remember." *Id.* at 311:20-24. When probed further, he replied, "I believe I had an excessive amount of days off, extra days off, some days off." *Id.* at 312:4-9. And, when asked whether there were any other ways in which his depression affected his work performance, he concluded, "I don't remember." *Id.* at 312:10-12. He further states in his declaration that he "suffered celiac disease related symptoms" throughout his employment at ISP, such as "fatigue, decreased energy, weakness and depression." Paladino Decl. ¶ 6. In his deposition, however, Plaintiff only testified that he experienced "[b]loatedness, . . . crampness, diarrhea" when asked what symptoms he suffered. *See* Goodstadt Reply Decl., Ex. DDD at 74:10-17.

discriminatory. *Id.* at 186:4-6, 189:12-20.  Moreover, the Complaint does not allege these disciplinary decisions to be discriminatory.

It is clear that Plaintiff's declaration is improperly used in a futile attempt to create issues of material fact, such as DHL's awareness of his alleged disabilities, which do not exist in the absence of his declaration. *Golden v. Merrill Lynch & Co.*, No. 06 Civ. 2970, 2007 U.S. Dist. LEXIS 90106, at *24 (S.D.N.Y. Dec. 6, 2007) ("Indeed, courts in the Second Circuit are particularly reluctant to credit affidavit testimony that alleged critical, obviously material facts that were not mentioned at deposition, noting that such circumstances strongly suggest a sham affidavit."). Even if the Court were to consider his declaration, Plaintiff's self-serving and contradictory statements do not help him establish his burden of establishing a *prima facie* case of disability discrimination or rebut DHL's legitimate non-discriminatory reasons for terminating his employment.

## II.   PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF DISABILITY DISCRIMINATION

Plaintiff cannot demonstrate the final element of a *prima facie* case of disability discrimination under the New York State Human Rights Law ("NYSHRL"), namely, that a discriminatory motive played a role in DHL's decision to terminate his employment for stealing company time while on a last chance agreement. *See* DHL Br. at 11-12 (citing cases).  Because Plaintiff cannot establish this last critical element, his disability discrimination claim fails as a matter of law and DHL is entitled to summary dismissal of this claim.

### A.   Plaintiff's Alleged Disabilities Were Not A Motivating Factor For His Termination

Plaintiff does not present a shred of evidence to rebut DHL's strong evidentiary showing that *no* causal connection exists between his alleged disabilities and his termination.[4]  To account for such

---

[4]     Plaintiff altogether avoids engaging DHL's argument that his disability discrimination claim must fail because he cannot show a nexus between his termination and his alleged disabilities. *See* DHL Br. at 11-14.  It remains undisputed that Plaintiff verified, in writing on two separate occasions to both DHL and the Department of Transportation, that he did *not* suffer from depression or any

a critical deficiency, Plaintiff blatantly misstates the record by claiming that his termination must be based on his disabilities because no other driver at the ISP station or in the region was terminated for theft of company time.  Pl. Br. at 20-22.  However, as the record evidence conclusively demonstrates, *every* driver caught engaging in theft of company time at the ISP station – and in Plaintiff's region – has been terminated for such conduct.  (Rule 56.1 ¶ 82).  Plaintiff mischaracterizes the record in an attempt to mislead the Court by arguing that five employees in Plaintiff's region who were disciplined for theft of company time were *not* terminated by DHL.[5]  Pl. Br. at 21-22.  Plaintiff, however, omits two critical facts:  (1) each of the employees was terminated for theft of company time, but was reinstated at his Step III hearing, just like Plaintiff; and (2) none of the employees cited were on a last chance agreement like Plaintiff.

To distort the record evidence in his favor, Plaintiff engages in semantics by arguing that the discipline received by other drivers in Plaintiff's region who were caught for theft of company time did not result in "final termination."  Pl. Br. at 22.  Just as Plaintiff was terminated in January 2006 and then reinstated with a time-served suspension, the record clearly establishes that the five

---

digestive problems, such as Celiac disease.  (Rule 56.1 ¶¶ 64, 67).  In addition, Plaintiff does not dispute, let alone address, DHL's argument that there is no evidence that DHL treated any similarly-situated employees differently than Plaintiff – the sole basis for Plaintiff's disability discrimination claim.  DHL Br. at 14-18.  Thus, for the purposes of this reply memorandum, DHL focuses on Plaintiff's illogical and false argument that his termination must be based on his alleged disabilities since no other drivers in Plaintiff's region were terminated for theft of company time.

[5]     Plaintiff again misrepresents the record to the Court by claiming that there were only five disciplinary actions in the ISP region for theft of company time between February 2004 and October 2006 in the ISP region.  Pl. Br. at 21.  DHL, however, produced evidence that Roger Vega also was terminated for theft of company time during the relevant period.  (Rule 56.1 ¶ 82).  Mr. Vega, like Plaintiff, was reinstated with a time-served suspension and placed on a last chance agreement.  (*Id.*).  In addition, Steven Avvento and Vincent Fusco, who worked at the ISP station with Plaintiff, also were terminated for theft of company time by the same ISP station management in that time frame.  (*Id.* ¶¶ 79-80, 82).  They were not on a last chance agreement and were reinstated with a time served suspension – exactly how Plaintiff was treated during his January 2006 theft of time offense when he was not on a last chance agreement.  (*Id.* ¶¶ 37, 80).

employees were treated identically to Plaintiff.[6]  Plaintiff's assertion, therefore, that these employees were not subject to a "final termination" is disingenuous insofar as Plaintiff ignores the indisputable fact that all these drivers were initially terminated by DHL for engaging in theft of company time.

Plaintiff's attempt to parse facts to distinguish himself from these other drivers by arguing that they engaged in "intentional wrongdoing" is equally unconvincing and made from whole cloth. Pl. Br. at 22.  All of these other employees were terminated for stealing company time – a Category A terminable offense.  (Rule 56.1 ¶ 82).  Plaintiff is apparently claiming that he engaged in "unintentional" wrongdoing, but he cannot escape the well-supported evidence that, like the other drivers, he was not working during the period of time for which he was being paid.  (*Id.* ¶ 17). Indeed, Plaintiff admits that he did not tell anyone at DHL about these gaps until after he was caught. (*Id.* ¶ 43).

## III.   PLAINTIFF'S VIOLATION OF THE LAST CHANCE AGREEMENT IS A LEGITIMATE, NON-DISCRIMINATORY REASON FOR HIS DISCHARGE

Plaintiff mistakenly assumes that he satisfied his burden to establish a *prima facie* case of disability discrimination, and instead focuses exclusively on DHL's burden – which the Court need not reach in light of Plaintiff's failure to carry his initial burden.  Plaintiff sweepingly asserts that an analysis of his October 9, 2006 termination will "show with great clarity how the 'gaps' in [Plaintiff's] time were either attributable to his disability or so routine in nature that the only conceivable conclusions [sic] is that [P]laintiff was singled out and terminated based on the stigma of

---

[6]      Raymond Yearwood was reinstated with a three day suspension and was warned that he would be immediately terminated if he committed the same infraction again. *See* Goodstadt Reply Decl., Ex. EEE.  James Fitanzo, Robert Bennedetto and Kenton Cameron were terminated for the Category A offense of theft of company time and reinstated at the Step III hearing with a five-week suspension. *See* Goodstadt Reply Decl., Exs. FFF, GGG.  Kenneth Quiroz was likewise terminated for the Category A offense of theft of company time and was later reinstated with a time-served suspension at his Step III hearing. *See* Goodstadt Reply Decl., Ex. HHH.  Louis Niles and Joseph Pisicchio were terminated for theft of company time for gaps and their grievances were denied at the Step III hearing and their terminations upheld. *See* Goodstadt Reply Decl., Exs. III, JJJ, KKK, LLL. The record cited by Plaintiff does *not* state that Mr. Pisicchio received a suspension as Plaintiff misrepresents. Pl. Br. at 21.

his disabilities." Pl. Br. at 19.  Plaintiff, however, utterly failed to deliver any such showing as he simply cannot do so, as even his citations to the record (when he chooses to do so) are replete with gross mischaracterizations and ignore the essential and undisputed fact that he was terminated for engaging in theft of company time while on a last chance agreement for having committed the same offense just nine months earlier.

### A. Plaintiff Cannot Rebut That He Was Terminated For Engaging In Theft of Company Time While On A Last Chance Agreement

At the outset, Plaintiff's argument fails because it relies on an unsupportable and false premise – that Plaintiff did not engage in any misconduct.  Pl. Br. at 22.  Rather than attempting to support such a claim with competent evidence, Plaintiff disingenuously asserts that DHL has not challenged Plaintiff's account of the events of October 9, 2006.  *Id.* at 23-24.  However, both during DHL's investigation into the gaps and during this litigation, Plaintiff himself provided a number of contradictory and inconsistent explanations of his gaps – which alone is strong evidence of the falsity of such explanations.  (Rule 56.1 ¶¶ 46-53, 55).

First, Plaintiff argues that DHL does not contest his current explanation as to what he was doing during the first gap – *i.e.*, that he was in the bathroom for more than an hour.  Pl. Br. at 23.  However, what remains unrebutted by Plaintiff is that when supervisor John Wallace asked Plaintiff on October 10, 2006, about the first gap, Plaintiff explained that he was feeling sick and represented to Mr. Wallace that he had contacted the dispatcher to inform him of his purported sickness as required by DHL policy.  (Rule 56.1 ¶ 47).  When Mr. Wallace indicated that he would check the message log to confirm Plaintiff's explanation, Plaintiff retracted his explanation since he never informed the dispatcher and knew that a review of his message log conclusively would demonstrate that he was lying to Mr. Wallace.  (*Id.*).

With respect to the second gap, Plaintiff told DHL that he had returned to the ISP station as he was instructed to do by Mr. Garcia, but given that there were no additional deliveries he went

back out to complete his remaining deliveries. (*Id.* ¶ 48). Mr. Garcia, however, did not call Plaintiff

off his route before he had completed his deliveries and, instead, specifically instructed Plaintiff to

finish his deliveries before coming back to the station. (*Id.* ¶ 48).

Plaintiff's most recent explanation of the third and longest gap – *i.e.*, that he spent 45 minutes

cleaning his truck and another 45 minutes suffering from a nervous breakdown (Paladino Decl. ¶ 18)

– is contradicted by the evidentiary record. On October 10, 2006, Plaintiff stated to Mr. Wallace

during DHL's investigation that he had no pickups or deliveries to do because another driver did not

need his assistance. (Rule 56.1 ¶ 49). In fact, Plaintiff admitted that he did not mention any

purported emotional breakdown until after the Step 3 hearing (which was more than a week *after* the

decision was made to terminate his employment), and never claimed to have been cleaning his truck

until after his termination. (*Id.* ¶¶ 53, 55); *see also* Goodstadt Reply Decl., Exs. MMM at 388:20-

391:21, NNN at 521:4-13. Similar to his other arguments, Plaintiff also fails to disclose to the Court

that during this 124 minute period of inactivity, Plaintiff missed two scheduled pickups. (*Id.* ¶ 50).

While Plaintiff correctly states that at 3:11 p.m. he picked up the package from a customer who was

closing his business four minutes later, he omits the important detail that such pickup was made

*outside* the service window, which is a service failure in violation of DHL policy. (*Id.* ¶ 50). And, it

was only after the dispatcher messaged Plaintiff at 3:04 p.m. (four minutes outside the pickup

window) to inform him that the customer complained about the late pickup that Plaintiff even

attempted to make the pickup. (*Id.*). Where, as here, Plaintiff fails to provide any evidence that DHL

terminated his employment for discriminatory reasons, DHL's business judgment that Plaintiff's

gaps of October 9, 2006 were not properly explained should not be second-guessed. *See, e.g.*,

*Murphy v. Potter*, No. 06 Civ. 1989, 2008 U.S. Dist. LEXIS 46183, at *35-36 (E.D.N.Y. June 12,

2008) (collecting cases).

Finally, Plaintiff again misrepresents the evidence when arguing that "DHL has never

terminated any other driver in the region during the period for which records were produced, for

simply having gaps in his or her manifest, and nothing more." Pl. Br. at 24.  To the contrary, the record reveals that Steve Avvento, a driver who is not alleged to have suffered from any disabilities and worked at the ISP station with Plaintiff, also was terminated by the same decision maker for having similar gaps in his manifest just one week before Plaintiff's termination.  (Rule 56.1 ¶¶ 79-80).  Since Plaintiff cannot offer any evidence to demonstrate that the well-supported reasons underlying his termination were pretextual, his disability discrimination claim must fail.

## B. It Is Undisputed That "Theft of Company Time" Is A Category A Terminable Offense

Plaintiff attempts to argue that "theft of company time" is not a terminable offense under the collective bargaining agreement.  Pl. Br. at 20.  However, the only evidence on the issue conclusively demonstrates that such offense always has been treated by DHL as a Category A terminable offense.  (Rule 56.1 ¶ 26).  Indeed, Plaintiff *admits* that theft of company time is a terminable offense (Pl. Br. at 20), and he has been terminated for such misconduct on three separate occasions.  (Rule 56.1 ¶¶ 26-27, 35-36, 56).  In fact, Plaintiff cannot point to a single instance where a DHL employee engaged in theft of company time and was not terminated under the collective bargaining agreement for such offense.  Instead, Plaintiff unsuccessfully tries to argue that the collective bargaining agreement does not define the offense and attempts to create a false distinction between "intentional" and "unintentional" misuse of company time.  Pl. Br. at 20-21.  Such attempt fails as the record demonstrates that discipline for theft of company time at the ISP station and in Plaintiff's region always has been categorized as a Category A terminable offense for "theft."[7]  (Rule 56.1 ¶¶ 16, 82).

---

[7]      Category C offenses under the collective bargaining agreement concern activity engaged in during "dead time" and are, therefore, readily distinguishable from Category A offenses and not applicable to Plaintiff's gaps.  *See* Goodstadt Reply Aff., Ex. OOO at 73:17-74:10; 76:5-13, PPP at 65:5-17.  "Dead time" activity refers to the period of time during which DHL employees are waiting for the arrival of a late plane and have no work to perform.  *See* Goodstadt Reply Aff., Ex. OOO at 76:7-13, PPP at 65:18-66:18.

## IV. PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF A FAILURE TO ACCOMMODATE

Realizing that his disparate treatment claim under the NYSHRL must fail as a matter of law, Plaintiff now manufactures, for the first time as part of his opposition to summary judgment, a failure to accommodate claim in a last ditch effort to salvage his disability discrimination claim. The Complaint, however, fails to plead a cause of action against DHL for its failure to accommodate Plaintiff's alleged disabilities. Indeed, a failure to accommodate claim is governed by a different section under the NYSHRL than Plaintiff's disparate treatment claim and, moreover, requires Plaintiff to make a different factual showing. *See* N.Y. Exec. Law §§ 296(1)(a); 296(3)(a); *see also Rhuling v. Tribune Co.*, No. 04 Civ. 2430, 2007 U.S. Dist. LEXIS 116, at *45-46 (E.D.N.Y. Jan. 3, 2007). Plaintiff, however, did not allege any facts other than what was necessary to make out a disparate treatment claim under the NYSHRL.

Even if the Court determines that Plaintiff has sufficiently pled a failure to accommodate claim – which he clearly has failed to do – this claim is equally futile. As described in detail above, there is not a scintilla of evidence to establish any connection between Plaintiff's alleged disabilities and his termination for theft of company time, which is fatal to his failure to accommodate claim. Indeed, "it remains essential to a finding of discrimination that plaintiff's disability, or the lack of accommodation to that disability, played a 'substantial' role that 'made a difference' to his employer's actions." *Parker v. Sony Pictures, Entm't, Inc.*, 260 F.3d 100, 108 (2d Cir. 2001) (citations omitted); *see also Cusack v. News Am. Marketing In-Store Servs. L.L.C.*, No. 06 Civ. 6166, 2008 U.S. Dist. LEXIS 50610, at *15-16 n.2 (S.D.N.Y. July 2, 2008).

At the outset, Plaintiff cannot even prove a *prima facie* case of disability discrimination based on DHL's failure to accommodate. Although DHL does not, for the purposes of its motion, dispute that there may be an issue of fact as to whether Plaintiff suffers from a cognizable disability

under the NYSHRL, Plaintiff has failed to set forth any facts to satisfy the remaining three elements.[8]

Even accepting Plaintiff's allegations as true for the purposes of this motion that DHL was aware of

his depression, DHL is entitled to summary dismissal of Plaintiff's failure to accommodate claim as

he alone was responsible for the breakdown in the interactive process. *Nugent v. St. Lukes-Roosevelt*

*Hosp. Ctr.*, No. 07 Civ. 2198, 303 Fed. Appx. 943, 946, 2008 U.S. App. LEXIS 25927, at *4-5 (2d

Cir. Dec. 22, 2008) (affirming summary judgment to employer where employee was responsible for

breakdown in process by failing to follow up with employer). Indeed, when Plaintiff told Mr.

Sidorski that he had family issues, Mr. Sidorski initiated the interactive process[9] by advising Plaintiff

to seek help and assured Plaintiff that he would "do everything he can." *See* Goodstadt Reply Decl.,

Ex. QQQ at 326:9-18. Plaintiff, however, cannot point to any evidence that he participated in any

way in the process that was initiated by DHL since he terminated the interactive process that DHL

had initiated in good faith. Indeed, Plaintiff admitted that he did not take advantage of DHL's

Employee Assistance Program, and did not seek medical leave, even though he was aware of that

option. *See* Goodstadt Reply Decl., Exs. RRR, SSS at 227:18-24, TTT at 247:15-248:20. When

---

[8]     It is undisputed that Plaintiff did not disclose his Celiac disease to DHL and, in fact, affirmed
in writing on at least three occasions that he did not suffer from Celiac disease. (Rule 56.1 ¶¶ 68-71).
Plaintiff mischaracterizes the record when citing to his deposition transcript to support his allegation
that his "debilitating condition was well-known among supervisors and co-workers." Pl. Br. at 6.
Plaintiff's cited testimony in no way establishes the fact that his Celiac disease was well-known to
DHL but, rather, merely confirms the following: (a) that he alleged that he suffered from Celiac
disease as part of this lawsuit (Paladino Dep. Tr. at 74:18-25); (b) that he was diagnosed with Celiac
disease, received treatment and was prescribed a diet (Paladino Dep. Tr. at 72:1-7; 73:25; 80:1-12;
546:1-11); (c) experienced certain symptoms (Paladino Dep. Tr. at 74-79); (d) had stomach problems
on October 9, 2006 (Paladino Dep. Tr. at 74:5-19); (e) and that his Celiac disease can cause
bathroom problems (Paladino Dep. Tr. at 375:10-14). Pl. Br. at 6. Accordingly, for the purposes of
this reply memorandum, DHL focuses on Plaintiff's claim that DHL failed to accommodate his
alleged depression.
[9]     Plaintiff inaccurately cites *Hayes v. Estee Lauder Cos., Inc.*, 34 A.D.3d 735, 737 (2d Dep't
2006), to argue that DHL can be liable for its alleged failure to accommodate solely on its failure to
engage in the interactive process. Pl. Br. at 17. The Court in *Hayes* stated that "there is *no*
controlling or persuasive authority holding that an employer may be held liable based solely on its
failure to engage in an interactive process with the employee, absent a showing that the breakdown of
the interactive process led to the employer's failure to provide a reasonable accommodation," which
is contrary to Plaintiff's explanation. *Hayes*, 34 A.D. 3d at 737 (internal citations omitted).

asked why he did not take leave, Plaintiff replied, "I ask myself that now. I don't know." *See id.,*
Ex. TTT at 248:16-20. Thus, any alleged failure on the part of DHL to explore reasonable
accommodations with Plaintiff can only be attributed to Plaintiff's failure to participate in the
process.

Plaintiff then unsuccessfully argues that even if DHL was not aware of his alleged disabilities
until *after* his October 9, 2006 theft of time, that would not excuse DHL from working with Plaintiff
to accommodate his disabilities rather than terminate his employment.[10]  Pl. Br. at 17. Plaintiff's
argument fails, however, since he cannot meet his burden of proving that "an accommodation exists
that permits [him] to perform the job's essential functions." *Borkowski v. Valley Cent. Sch. Dist.*, 63
F.3d 131, 138 (2d Cir. 1995). Plaintiff cannot justify his failure to satisfy his burden by flippantly
passing it off as "a question of fact left largely unexplored because of DHL's refusal to consider
accommodations altogether." Pl. Br. at 18. Indeed, Plaintiff cannot even speculate as to what
accommodation DHL could provide that would permit him to not perform work while being paid by
DHL.[11]  *See, e.g., Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000) ("[t]he

---

[10]      The single case that Plaintiff relies on for this proposition, *Simmons v. New York City Transit
Authority*, No. 02 Civ. 1575, 2008 U.S. Dist. LEXIS 54872 (E.D.N.Y. July 17, 2008), is easily
distinguishable. In *Simmons*, the employer *was aware* of plaintiff's irritable bowel syndrome as it
had been well-documented with doctor's notes submitted to the employer. *Id.* at *17-18. The
employer, while fully aware of plaintiff's disability, reclassified plaintiff to a permanent restricted
status, despite her explicit request for an accommodation at the time of the reclassification
examination. *Id.* at *15-16. Here, Plaintiff had already been terminated by the time he notified DHL
of his alleged depression and affirmatively verified in writing that he did *not* suffer from depression
or any digestive problems. (Rule 56.1 ¶¶ 64-67, 70-74).
[11]      The only possible accommodation even identified by Plaintiff was when he requested at the
Step 3 hearing – *after* he had been terminated – that DHL be "understanding" and "compassionate."
*See* Goodstadt Reply Decl., Ex. UUU at 531:13-18. Plaintiff also testified that he had asked Mr.
Sidorski to be understanding insofar as he was late to work, which is clearly not a reasonable
accommodation. *See id.* at 532:23-533:14. It is well-recognized that an employer is not required to
lower its standards to provide a reasonable accommodation – which is precisely what Plaintiff is
arguing DHL should have done in his case. *See Davis v. Pitney Bowes*, No. 95 Civ. 4765, 1997 U.S.
Dist. LEXIS 16258, at *49-51 (S.D.N.Y. Oct. 20, 1997) ("An employee cannot be considered
'otherwise qualified' when she is unable to report to work at the time required, because she is not
able to perform one of the essential functions of her job.") (collecting cases).

burden of persuasion on the existence of an effective accommodation is not satisfied by mere speculation"). The reality is that DHL could not have provided Plaintiff with any accommodation short of permitting him to have unexplained gaps of time during his work day and missing scheduled pickups and deliveries that would still have allowed Plaintiff to perform the essential functions of his job.[12] Thus, Plaintiff's failure to accommodate claim must fail as a matter of law.

## V. PLAINTIFF'S HYBRID 301 CLAIM SHOULD BE DISMISSED[13]

Assuming *arguendo* that Plaintiff can overcome his initial burden against Local 295 – which he has failed to do – Plaintiff has not provided any evidence that DHL violated the collective bargaining agreement when it terminated his employment for theft of company time. Indeed, Plaintiff cannot rebut the well-supported evidence that theft of company time is a Category A terminable offense, that he was on notice of this fact, and that DHL has terminated others at the ISP station and in the region who violated the collective bargaining agreement by stealing company time. (Rule 56.1 ¶¶ 16, 26, 82). Moreover, Plaintiff cannot overcome the fact that he was on a last chance agreement for a like offense committed just nine months earlier. (*Id.* ¶¶ 37, 56). Thus, Plaintiff's claim that DHL violated the collective bargaining agreement must be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, as well as those set forth in DHL's moving papers, Defendant DHL respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety.

---

[12] Plaintiff's reliance on *Tully-Boone v. North Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419 (E.D.N.Y. 2008), to argue that a diagnosis of depression is sufficient to trigger a reasonable accommodation analysis is entirely misplaced. Pl. Br. at 18-19. As an initial matter, *Tully-Boone* involved a motion to dismiss, not a summary judgment motion. *Tully-Boone*, 588 F. Supp. 2d at 421, 425. In *Tully-Boone*, the plaintiff had specifically requested a medical leave or a flexible start time as an accommodation for her anxiety and depression, which the defendant-employer argued was unreasonable. *Id.* at 425. The court held that on a motion to dismiss, it was unwilling to find that plaintiff's request was unreasonable as a matter of law. *Id.*

[13] DHL respectfully refers the Court to its moving papers for its argument addressing Plaintiff's failure to establish a breach of the duty of fair representation against Local 295. DHL Br. at 20-23.

Dated:  New York, New York
         May 15, 2009

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: _____
         Andrew S. Goodstadt
         Cindy E. Uh

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845

*Counsel for Defendant DHL Express (USA), Inc.*