**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------

**Dino Paladino,**　　　　　　　　　　　　　　　　　]
　　　　　　　　　　　　　　　　　　　　　　　　　]
　　　　　　**Plaintiffs,**　　　　　　　　　　　　]
　　　　　　　　　　　　　　　　　　　　　　　　　]　**CV-07-1579 (DRH)(ARL)**
　　　　　　- against -　　　　　　　　　　　　　　]
　　　　　　　　　　　　　　　　　　　　　　　　　]
**DHL Express (USA), Inc. and International Brotherhood**　]
**Of Teamsters Air Freight Chauffers, Handlers,**　　　]
**Warehousemen Allied Workers Union No. 295,**　　　　]
　　　　　　　　　　　　　　　　　　　　　　　　　]
　　　　　　**Defendants.**　　　　　　　　　　　　]
-----------------------------------------------

# Memorandum of Law In Opposition to Defendant's Motion For A Bond For Costs On Appeal

　　　　　　　　　　　　　　　　　　　Of Counsel:

　　　　　　　　　　　　　　　　　　　Michael G. O'Neill

# Table of Contents

Table of Contents ..................................................................................................................2

Authorities Cited .................................................................................................................3

Argument .............................................................................................................................4
    The Applicable Law .................................................................................................4
    1.   Plaintiff Is Unable Financially To Post The Bond. ...................................................4
    2.   The Risk That Plaintiff Would Not Pay Defendant's Costs If The Appeal
        Fails. ...........................................................................................................................4
    3.   Plaintiff's Appeal Has Merit. .....................................................................................5
    4.   Plaintiff's Appeal Is Taken In Good Faith, And He Has Shown No Vexatious
        Conduct. .....................................................................................................................8

Conclusion ...........................................................................................................................9

## Authorities Cited

**Cases**

*Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) ................. 5

*Matter of McEniry v. Landi*, 84 N.Y.2d 554, 620 N.Y.S.2d 328 (1994) ........................... 6

*Miranda v. United States*, 458 F.2d 1179 (2d Cir. 1972) .................................................. 6

*RBFC One, LLC v. Zeeks, Inc.*, 2005 WL 2140994 (S.D.N.Y. Sept. 2, 2005) .................. 4

*Simmons v. New York City Transit Authority*, 2008 WL 2788755 (E.D.N.Y.) ................. 7

*Watson v. E.S. Sutton, Inc.*, 2006 WL 4484160 (S.D.N.Y. Dec. 6, 2006) ......................... 4

# Argument

***The Applicable Law***

Plaintiff acknowledges that defendant has articulated the correct legal standard for deciding this motion.

> When considering whether a bond pursuant to Federal Rule of Appellate Procedure 7 is appropriate in a particular case, a district court will generally consider: 1) the appellant's financial ability to post a bond; 2) the risk that the appellant would not pay appellee's costs if the appeal fails; 3) the merits of the appeal; and 4) whether the appellant has shown any bad faith or vexatious conduct. *Watson v. E.S. Sutton, Inc.*, 2006 WL 4484160, *2 (S.D.N.Y. Dec. 6, 2006)

These factor are not exhaustive. *RBFC One, LLC v. Zeeks, Inc.*, 2005 WL 2140994 (S.D.N.Y. Sept. 2, 2005).

A review of the above factors demonstrates that defendant's motion should be denied.

1. ***Plaintiff Is Unable Financially To Post The Bond.***

The accompanying declaration of Michael G. O'Neill, attorney for plaintiff, and plaintiff's May 3, 2010 declaration in support of his motion for leave to proceed in forma pauperis, demonstrates beyond serious dispute that plaintiff is not in any financial position to post the bond requested by defendant. Accordingly, imposition of the requirement of a bond would likely prevent plaintiff from proceeding with his appeal.

2. ***The Risk That Plaintiff Would Not Pay Defendant's Costs If The Appeal Fails.***

4

At first blush, this would appear to be nothing more than the flip side of point number one. If plaintiff cannot afford the bond, there is a risk he could not pay the costs if he loses the appeal. Vice versa, if plaintiff can afford to post the bond, it would stand to reason that he could pay the costs after appeal.

Plaintiff submits that this factor means something else. The risk that is being measured must mean something other than financial inability to pay, because that is subsumed in the first factor. For example, if the appellant is a resident of a foreign country, that would pose some risk wholly apart from that created by the financial standing of the appellant. Likewise, evidence that the appellant has secreted assets or taken other steps to thwart creditors would be relevant to this factor.

Defendant has not asserted any basis to believe that plaintiff would refuse to answer for costs if he were financially able to pay them.

### 3.  *Plaintiff's Appeal Has Merit.*

This is obviously the most disputed factor in light of the Court's earlier denial of plaintiff's application to proceed in forma pauperis on the grounds that plaintiff's appeal lacked merit. Plaintiff respectfully submits that the Court applied the wrong standard in determining that plaintiff's appeal lacks merit.

The standard for determining whether an appeal has merit was set forth by the Supreme Court in *Coppedge v. United States*, 369 U.S. 438, 448, 82 S.Ct. 917, 922, 8 L.Ed.2d 21 (1962):

> It is not the burden of the petitioner to show that his appeal has merit, in the sense that he is bound, or even likely, to prevail ultimately. He is to be heard, as is any appellant in a criminal case, if he makes a rational argument on the law or facts. It is the burden of the Government, in opposing an attempted criminal appeal in forma pauperis, to show that the appeal is lacking in merit, indeed, that

5

>it is so lacking in merit that the court would dismiss the case on motion of the Government, had the case been docketed and a record been filed by an appellant able to afford the expense of complying with those requirements.

See also *Miranda v. United States*, 458 F.2d 1179, 1181 (2d Cir. 1972).

Under the above standard, plaintiff's appeal should be heard if he makes a rational argument on the law or the facts. Plaintiff easily meets this standard.

Plaintiff's disability discrimination was brought solely under state law. In interpreting Section 296(1)(a) of the New York Executive Law, the New York State Court of Appeals has held that a "complainant states a prima facie case of discrimination if the individual suffers from a disability and the disability caused the behavior for which the individual was terminated." *Matter of McEniry v. Landi*, 84 N.Y.2d 554, 558, 620 N.Y.S.2d 328, 330 (1994). Once plaintiff establishes a prima facie case, "the burden of proof shifts to the employer to demonstrate that the disability prevented the employee from performing the duties of the job in a reasonable manner or that the employee's termination was motivated by a legitimate nondiscriminatory reason. *McEniry v. Landi, supra at* 558.

In this case, plaintiff was terminated for "gaps" in his manifest, and it is undisputed that the gaps in plaintiff's manifest were caused by his disabilities.[1] The record also supports the conclusion that defendant was aware of this fact no later than plaintiff's third step hearing, and much earlier in the case of his depression. The employer's obligation to consider the effect of a disability on performance continues during the grievance process. *Simmons v. New York City Transit Authority*, 2008 WL 2788755 (E.D.N.Y.).

---

[1] Defendant may dispute this fact in the sense of arguing that it is not true, but it has failed to present any evidence to dispute the reasons given by plaintiff for the gaps. Furthermore, for purposes of summary judgment, plaintiff's version of the facts is given credit.

6

The record would also support the conclusion that defendant failed to meet its burden of showing that plaintiff's disability prevented plaintiff from performing the duties of his job in a reasonable manner or that plaintiff's termination was motivated by a legitimate nondiscriminatory reason. Plaintiff had performed his job satisfactorily for years after first being diagnosed with depression in 2002. Furthermore, the totality of the circumstances surrounding defendant's decision to terminate plaintiff's employment strongly suggest that something other than a bona fide, legitimate business reason motivated that decision. Among other things:

- The events at issue took place on a Federal Holiday, Columbus Day. Plaintiff was asked by defendant to work a second shift, and although plaintiff told defendant that he was feeling sick and wanted to go home, he relented when defendant told him that there wouldn't be much work to do.

- Plaintiff finished all his work and there were no service failures on his afternoon shift, despite the two hour gap.

- Defendant's business records show that there was no work for plaintiff to do for most of that two hour gap.

- There is no evidence that plaintiff was engaged in personal business or any other wrongful activity during the two hour gap.

- Defendant's business records showed that significant gaps in manifests are a daily occurrence. On the day in question, several drivers had more gap time than plaintiff.

- Defendant's business records show that defendant has *never* terminated an employee solely for a manifest gap unaccompanied by evidence that the employee was engaged in some other form of misconduct.

- A manifest gap, without more, is a category C offense, for which plaintiff could not have been terminated.

Plaintiff acknowledges that some of the above facts are disputed, however resolution of those disputes is for the jury.

Based on the above, plaintiff has more than met the "rational argument" standard of *Coppedge* and *Miranda*. This is particularly so in view of the fact that this Court, in granting summary judgment to defendant, did not apply the *McEniry* standard or otherwise address plaintiff's arguments based on that case law. Thus, in addition to the fact based arguments made above, plaintiff will argue on appeal that the Court erred by not applying the correct standard from controlling state law.

### 4. Plaintiff's Appeal Is Taken In Good Faith, And He Has Shown No Vexatious Conduct.

The foregoing discussion of the merits of plaintiff's appeal should be sufficient to establish plaintiff's good faith basis for taking the appeal. Plaintiff was a long term employee of the defendant. He was terminated because he was sick. He did nothing wrong. The loss of his job has caused him immeasurable hardship and suffering. New York law restricts an employer's ability to terminate an employee because of an illness. Plaintiff respectfully asserts that this Court misapplied New York law, indeed, failed to address it in its decision granting summary judgment. Plaintiff is proceeding in absolute good faith in his appeal of that judgment.

Defendant has not and cannot suggest that plaintiff has engaged in any vexatious conduct. Plaintiff has done nothing to prolong discovery or otherwise make this litigation more expensive or difficult than it need be.

## Conclusion

Plaintiff understands that defendant would prefer not to be sued and prefer that plaintiff not proceed with his appeal.  Plaintiff, however, has a meritorious appeal, plaintiff is acting in good faith, and plaintiff cannot afford to post a bond to cover defendant's estimated costs of appeal, which are inflated in any event.  Defendant's motion should be denied in full.

Dated:  New York, New York
        November 11, 2010

MICHAEL G. O'NEILL
(MO3957)

_____
Attorney for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-0990

9